685 So.2d 1177 (1996)
Georgia "Gia" P. KOSMITIS, Plaintiff-Respondent,
v.
Jack M. BAILEY, Jr., Defendant-Applicant.
No. 28585-CW.
Court of Appeal of Louisiana, Second Circuit.
December 20, 1996.
*1179 Blanchard, Walker, O'Quin & Roberts by A.M. Stroud, III, Peter J. Rotolo, III, Shreveport, for Defendant-Applicant.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, Shreveport, for Plaintiff-Respondent.
Before MARVIN, C.J., and NORRIS and HIGHTOWER, JJ.
MARVIN, Chief Judge.
In this action for breach of contract and defamation arising from a failed business association between two Shreveport attorneys, plaintiff Georgia (Gia) Kosmitis and defendant Jack Bailey, we granted a supervisory writ to review the trial court's denial of the defendant's motion for summary judgment on the defamation claims. Having initially recalled the writ as improvidently granted on the ground of untimeliness, we now address the merits of the application on remand to us from the supreme court, which ruled that the application was timely. Kosmitis v. Bailey, 96-1573 (La. 10/4/96), 680 So.2d 1167.
Reviewing the supporting and opposing documents in this record de novo, as directed by Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991), in the light of the extremely heavy burden that a defamation plaintiff must meet to withstand a motion for summary judgment, we reverse and render summary judgment in part, dismissing the defamation claims founded on Bailey's alleged statements to Gilsbar, Inc., the Louisiana Office of Employment Security and the Riverboat Gaming Commission investigators. As to the remainder of the defamation claims, however, which involve statements allegedly made by Bailey to clients, we affirm the trial court's denial of summary judgment, finding a sufficiently strong showing in the record to allow these claims to proceed to trial along with Kosmitis's breach of contract claim. Sassone v. Elder, 626 So.2d 345 (La. 1993); Wright v. Dollar General Corp., 602 So.2d 772 (La.App. 2d Cir.1992), writ denied; Zellinger v. Amalgamated Clothing, 28,127 (La.App.2d Cir. 4/3/96), 683 So.2d 726.

DEFAMATION SUMMARY JUDGMENT
Because of the constitutional considerations involved in defamation claims, and notwithstanding the general preference for a trial on the merits when issues of material fact are asserted in other types of cases, defamation claims have been found to be inordinately susceptible to summary adjudication at an early stage of the proceedings, regardless of whether the defendant is or is not a member of the news media. See and compare Sassone (media defendant), Wright (retail store defendant, plaintiff's former employer) and Zellinger (labor union defendant).[1]
We summarize the law applicable to summary judgment motions in the defamation setting, adding our own emphasis throughout:
In addition to the usual function of screening a case for the mere presence or absence of disputed material facts, summary judgment motions in the defamation setting also test the evidentiary strength of the plaintiff's case, that is, whether the plaintiff will likely be able to prove his or her factual assertions with convincing clarity at trial. Wright, 602 So.2d at 774; Sassone, 626 So.2d at 351-52. Without such evidence, there is no genuine issue of material fact, and summary judgment should be granted. Sassone, 626 So.2d at 351; Zellinger, 28,127 at p. 2, 683 So.2d at 730.
The five essential elements of defamation are
defamatory words
publication
falsity
malice, and
resulting injury.
*1180 If even one of these elements is lacking, the cause of action fails. Roberts v. Louisiana Bank & Trust Co., 550 So.2d 809 (La. App. 2d Cir.1989), writ denied. See also Sassone, 626 So.2d at 352; Taylor v. Town of Arcadia, 519 So.2d 303, 306 (La.App. 2d Cir. 1988), writ denied.
If the documents filed in support of the defendant's motion for summary judgment are facially adequate to refute the essential elements of a particular defamation claim, the claim will not survive summary judgment unless the plaintiff affirmatively produces evidence of sufficient quality and quantity to demonstrate that she likely will be able to meet her burden of proof at trial. Sassone, 626 So.2d at 351. As was said in Wright, the defamation plaintiff who opposes summary judgment bears a burden of proof more onerous than plaintiffs in other actions, and must show that she can produce sufficient evidence at trial to prove the elements of the case with convincing clarity. 602 So.2d at 774. This is, indeed, a more onerous burden.

DEFAMATION
Defamatory words are defined as words which tend to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. Sassone, 626 So.2d at 352. To be actionable, the words must be communicated or "published" to someone other than the plaintiff. Taylor, 519 So.2d at 305.
Whether a particular statement is objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener. Sassone, 626 So.2d at 352; Taylor, 519 So.2d at 306. If that issue is resolved in the plaintiff's favor, the actual recipient's subjective understanding or perception of the communication as defamatory becomes a factual issue for the jury. Sassone, 626 So.2d at 352. If, however, the court determines that the words at issue are not objectively capable of having a defamatory meaning, the plaintiff's claim is not actionable and may be dismissed by summary judgment, regardless of the arguable presence or evidentiary strength of the remaining elements of the claim. Id.
Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, are considered defamatory on their face, or defamatory per se. Elmer v. Coplin, 485 So.2d 171 (La.App. 2d Cir.1986), writ denied. When the plaintiff proves publication of words which are defamatory per se, the elements of falsity and malice are presumed, but may be rebutted by the defendant. Id.; Wright, supra, 602 So.2d at 775. The element of injury may also be presumed or inferred from the publication of words which are defamatory per se. Garrett v. Kneass, 482 So.2d 876, 880 (La.App. 2d Cir.1986), writ denied; Trahan v. Ritterman, 368 So.2d 181, 185 (La.App. 1st Cir.1979); Lucas v. Ludwig, 265 So.2d 245, 248 n. 2 (La.App. 4th Cir.1972).
When the words at issue are not defamatory per se, the plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice and injury. Malice, or the lack of a reasonable belief in the truth of the statement, may sometimes be inferred or implied from the circumstances surrounding the communication. See, for example, Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4th Cir.1985). In cases involving statements made about a public figure or a matter of public concern, however, the plaintiff must prove actual malice, that is, that the defendant either knew the statement was false or acted with reckless disregard for the truth. See generally Romero v. Thomson Newspapers, 94-1105 (La.1/17/95), 648 So.2d 866, U.S. cert. denied.
The element of injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish, even when no special damage such as loss of income is claimed. Lemeshewsky, supra; Rennier v. State Dept. of Public Safety, 428 So.2d 1261 (La.App. 3d Cir.1983). Further, even when no special *1181 damages are claimed and the defamatory statements have had little or no adverse effect on the plaintiff's reputation, damages are recoverable for the plaintiff's own embarrassment, humiliation, anxiety or hurt feelings resulting from the defamation. Time, Inc. v. Firestone, 424 U.S. 448, 460, 96 S.Ct. 958, 968, 47 L.Ed.2d 154 (1976); Freeman v. Cooper, 390 So.2d 1355, 1360 (La.App. 4th Cir.1980), affirmed, 414 So.2d 355 (La.1982); Garrett v. Kneass, supra, 482 So.2d at 882; Trahan, supra, 368 So.2d at 185-86; Rennier, supra, 428 So.2d at 1264; Lege v. White, 619 So.2d 190 (La.App. 3d Cir.1993).
Regardless of the type of injury asserted, however, the plaintiff must present competent evidence of the injuries suffered. Id. The plaintiff must also show a "but for" causal connection between the defendant's conduct and the injuries, that is, that the defamatory statements were a substantial factor in causing the harm. Taylor, supra, 519 So.2d at 306.
Even when the plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified. Martin v. Lincoln General Hospital, 588 So.2d 1329, 1333 (La.App. 2d Cir.1991), writ denied.

ISSUES
Neither litigant complains of the trial court's ruling that Bailey's letters to the Office of Disciplinary Counsel of the Louisiana State Bar Association concerning Kosmitis were absolutely privileged under § 12(A), Rule 19 of the Supreme Court Rules. The litigants do, however, dispute whether other statements allegedly made by Bailey to Gilsbar, Inc., his law firm's malpractice insurer, to the Louisiana Office of Employment Security, and to clients of the law firm, concerning the reason for Kosmitis's departure from the firm, enjoy a qualified privilege on the grounds that the statements were made in good faith and were relevant to a subject of legitimate mutual interest to both Bailey and the respective recipients of the statements. See generally Roberts and Wright, both cited supra; Boyd v. Community Center Credit Corp., 359 So.2d 1048 (La.App. 4th Cir.1978).
In addition to the above statements as to which a privilege is claimed, Bailey is alleged to have made defamatory statements about Kosmitis to one or more Louisiana State Police officers who investigated her eligibility for appointment to the Riverboat Gaming Commission after her association with Bailey ended.
Before addressing the particulars of these various statements, we briefly summarize the factual context out of which the statements arose, according to the filings of record for and against summary judgment.

FACTS
On October 9, 1991, Bailey and Kosmitis signed a document entitled "Contract of Employment" for the period October 1, 1991-December 31, 1992. The contract provided that Kosmitis would receive 15 percent of the attorney fees collected by the firm during the contract period, and that her share would increase to 20 percent if gross collections exceeded a specified dollar amount before the end of 1992. Kosmitis left the firm on or about October 5, 1992, the reasons for which are in sharp dispute.
Kosmitis alleges that Bailey refused to pay her the additional five percent in attorney fees called for under the contract when the threshold collection amount was reached in the fall of 1992. She claims Bailey ordered her to leave the firm in early October, several months before the contract expired, because she refused to sign the contract he drafted for the year 1993, which contained terms less favorable to Kosmitis than did the 1992 contract. Kosmitis contends the agreement in effect in 1992 was not an "employment contract," but a "contract for legal services."
Construing the 1992 agreement as an employment contract and Kosmitis as an "employee" of the law firm, Bailey maintains that the contract was terminated "for cause," consisting entirely of "misconduct" by Kosmitis. According to Bailey, Kosmitis failed to work on files that were assigned to her; she disrupted the office by telling staff members not *1182 to work on files that Bailey had instructed them to work on and by having emotional "outbursts" in the presence of other employees and clients; and she made disparaging remarks about Bailey outside of the office.
Kosmitis categorically denies any misconduct, claiming that Bailey's assertions are "totally untrue" and were fabricated by him as a pretext for breaching the agreement to pay her a higher percentage of the fees collected by the firm in 1992.

STATEMENTS TO GILSBAR AND THE OFFICE OF EMPLOYMENT SECURITY
In her petition, Kosmitis alleged that Bailey defamed her by falsely stating to the corporate representative of the firm's malpractice insurance, Gilsbar, Inc., and to the Louisiana Office of Employment Security, that her employment "was terminated effective 10/5/92 for cause. She had engaged in behavior that was misconduct." Our emphasis. This statement was made on a standard employment termination form used by OES and signed by Bailey. No particulars of the alleged misconduct were stated on the form.
Kosmitis alleged that Bailey "published" the defamatory statement by sending a copy of the OES form to Gilsbar, as an attachment to his letter of October 7, 1992. On its face, the letter simply informs Gilsbar that Kosmitis "has elected not to renew her employment contract ... [e]ffective October 5, 1992," and requests that her name be deleted from the firm's insurance application and policy. Kosmitis asserted, however, that she received a carbon copy of Bailey's letter to Gilsbar, and that a photocopy of the OES form was attached to her copy of the letter. She alleged on information and belief that the OES form was "forwarded to Gilsbar and the Office of Employment Security."
In his affidavit and deposition filed in support of the motion for summary judgment, Bailey said he "completed" the OES form, implying that the form was never filed with OES. Bailey expressly denied having sent the OES form or a copy of it to Gilsbar, explaining, "There was no reason to [do that in order] to eliminate an associate employee from a legal negligence policy." Our brackets.
In addition to disputing the element of publication, Bailey claimed the statement that Kosmitis "was terminated ... for cause [for having] engaged in behavior that was misconduct" was true, was not defamatory in meaning, was made without malice, and did not cause any injury to Kosmitis. Alternatively, Bailey argued that the communication to either or both Gilsbar and OES, even if facially actionable, was privileged, having been made in good faith on a subject of legitimate mutual interest to Bailey and to the respective recipients. See Roberts, Wright and Boyd, all cited supra.

THE FIVE ELEMENTS
The truth or falsity of Bailey's assertion that Kosmitis was "terminated for misconduct" is a disputed fact which is material not only to the defamation claim, as to which summary judgment is sought, but also to the underlying breach of contract claim, which is not involved in the summary judgment motion here under consideration. On this record, the issue of truth or falsity of that alleged statement is genuinely disputed as to both claims, defamation and breach of contract, and simply cannot be resolved by summary judgment. La.C.C.P. art. 966.
Notwithstanding that the presence of even one material factual dispute ordinarily suffices to afford the plaintiff a trial on the merits, the plaintiff in a defamation action must establish the evidentiary strength of each essential element of her case which is tested by a well-founded motion for summary judgment. Sassone, Roberts, both cited supra. Here, although the truth or falsity of Bailey's statement to Gilsbar and OES is genuinely disputed, Kosmitis has failed to "affirmatively produce evidence of sufficient quality and quantity" (Sassone) to establish "with convincing clarity" (Wright) that Bailey published or communicated the statement, to either or both Gilsbar and OES. Her allegations of publication were not based on her personal knowledge, were not supported by the testimony or affidavit of anyone having personal knowledge of the matter, and were *1183 denied by Bailey, the source of the alleged publication.
Assuming solely for discussion purposes that the statement was false and was published or communicated to one or both entities, Gilsbar and OES, we conclude the bare and general assertion that Kosmitis was "terminated for misconduct," without further factual specificity and within the context of having been expressed to entities which routinely receive such statements in the course of their business activities, cannot objectively be regarded as defamatory in meaning or in its intended effect. Sassone, Taylor, both cited supra.
When a defamation claim is tested by a motion for summary judgment which is adequately supported by documents disputing or denying one or more essential elements of the claim, the plaintiff must affirmatively produce evidence of sufficient quality and quantity to demonstrate that she likely will be able to meet her burden of proving those elements of the case with convincing clarity at trial. If the plaintiff fails to meet her burden as to any contested element, summary disposition of the claim is appropriate. See, for example, the supreme court's rationale in Sassone for reinstating the trial court's grant of summary judgment: "We conclude that the communications at issue in this case were not [objectively] defamatory [in meaning] and therefore not actionable. Accordingly, we do not reach the issues of whether the statements were false or whether plaintiffs were required to prove actual malice." 626 So.2d at 352; our brackets.
Similarly, and because we find the record lacking as to two essential elements of the plaintiff's case, publication and defamatory meaning, we conclude that Bailey's alleged defamatory statements to Gilsbar and the OES are not actionable, pretermitting consideration of the qualified privilege defense asserted by Bailey.

STATEMENTS TO RIVERBOAT GAMING COMMISSION INVESTIGATORS
At some unspecified time after her association with Bailey ended, Kosmitis was nominated by the governor for an appointed position on the Riverboat Gaming Commission. Her eligibility for the position was investigated by several Louisiana State Police officers, who reported their findings to the state senate for consideration at Kosmitis's confirmation hearing. Bailey was interviewed by the officers during the investigation.
Kosmitis alleged that Bailey made defamatory statements about her to the state police officers, but was unable to produce the names of the officers or any written reports or other documents prepared during the investigation in response to Bailey's discovery requests. Bailey maintained that Kosmitis's inability to identify the officers to whom the defamatory statements were allegedly made was fatal to her defamation claim.
In her affidavit opposing summary judgment, Kosmitis asserted that Bailey made defamatory statements to the officers about her
character, past employment, alleged misconduct, and complaints made by him to the Louisiana State Bar Association. During my senate confirmation hearing I was advised that my record was unmarred with [the] exception that I had complaints against me pending by Mr. Bailey.
Further, I was questioned concerning Mr. Bailey[`s] allegations during this investigatory process.
However, because of the confidentiality of the actual investigation I am not privy to the names of the actual officers who personally interviewed [Bailey]. I only know what was reported to me and publicly to the Louisiana State Senate Committee.
This has caused me great upset, damage, humiliation and embarrassment.
In her deposition excerpts, Kosmitis testified:
... [Bailey] has made statements to background investigators that were investigating me for the Riverboat Gaming Commission appointment by the Governor.
Q. What had he told them?
A. That I had been fired for misconduct implying unethical behavior on my part prior to October 7th [of 1992].

*1184 Q. And it is your position that you were not fired for misconduct?
A. No. I was asked to leave because I did not sign the 1993 contract in October when my contract didn't expire until December of 1992.
No other particulars as to the content of the alleged defamatory statements to the Louisiana State Police appear in this record, notwithstanding Kosmitis's assertion that she "was questioned" about Bailey's allegations, both publicly and privately.
Bailey, in turn, filed an affidavit stating that he did not remember the names of the two Louisiana State Police officers who had interviewed him, and that he "gave Ms. Kosmitis a positive and good review and in no way made defamatory comments about her character, past employment, misconduct or complaints to the Louisiana State Bar Association." We note parenthetically that Kosmitis was confirmed and became a member of the Riverboat Gaming Commission.
Considering this record and the summary judgment criteria discussed above, we must conclude that as to these alleged defamatory statements made to the RGC investigators, Kosmitis has not met her burden of showing the likelihood that she will be able to prove her allegations with convincing clarity at trial. Apparently she has not succeeded in discovering the names of the officers to whom Bailey made the alleged statements. As with the statements to Gilsbar and OES, Bailey has denied the pertinent elements of the defamation claim as to which he has personal knowledge (publication of a false and defamatory statement about Kosmitis with malice). Though the elements of falsity and malice are "subjective" facts which appear to be genuinely disputed and inextricably tied to the breach of contract claim which is not part of the summary judgment motion, Kosmitis has not made a strong evidentiary showing in this record of the objective elements of her claim relating to the RGC investigators: what Bailey said or "published" to whom, and whether his statements are objectively capable of having a defamatory meaning within the context in which they were made. Kosmitis clearly does not have personal knowledge about what Bailey said to whom outside her presence, and her efforts to locate witnesses possessing such knowledge have been unsuccessful, according to this record.
Our understanding is that a plaintiff faced with an otherwise well-founded motion for summary judgment in an action other than a defamation action need only identify a genuine or "triable" material factual issue that is disputed in the case to avoid summary judgment. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730. The plaintiff in such a situation in a defamation action has the very onerous burden to affirmatively establish the evidentiary strength of the material facts for trial purposes, at an early stage of the proceedings, to withstand a well-founded summary judgment motion. Sassone, supra. Rather than simply showing the existence of a "triable" issue, without regard to her ability to eventually prove the asserted facts at trial, the defamation plaintiff must establish, in a convincing manner and early in the proceedings, that she has a "provable" case.
Reviewing the record de novo, we conclude that Kosmitis has not made the requisite showing of the evidentiary strength of her case as to the defamatory statements allegedly made by Bailey to Gilsbar, OES and the investigators for the Riverboat Gaming Commission. As to these statements, we reverse the trial court's denial of summary judgment in part and render judgment in Bailey's favor.

STATEMENTS TO CLIENTS
In her petition and answers to interrogatories, Kosmitis alleged that Bailey made defamatory statements about her to several clients of the firm who asked Bailey why Kosmitis was no longer working there.[2] Two such statements were allegedly made in writing, while the others were made verbally. Bailey allegedly told the various clients, who *1185 are named in the record, some or all of the following: Kosmitis "is not a real lawyer. She does not know how to handle a case. She was my gopher. She was fired for misconduct, for inappropriate behavior, and for failing to do any work. She is an incompetent lawyer. She did not do any work on your file."
In his motion for summary judgment and supporting documents, Bailey did not deny that he made the alleged statements to any of the clients named in the record as recipients. He simply asserted that "any statements or comments" he made about Kosmitis "in any conversation" were true, were made "without malice and ... in good faith ... [with] a reasonable belief ... as to the truth thereof," and were simply "fair comment or opinion about matters of public concern," based on his observations of his "employee's" work performance.
In addition to the "good faith communication" defense mentioned supra, Bailey asserted that any statements he made to persons who were then clients of his law firm were protected by the attorney-client privilege.
In her opposition to summary judgment, Kosmitis filed excerpts of her own deposition in which she generally described the account of Bailey's statements that was related to her by the various clients, some of whom became her clients after her association with Bailey ended. Kosmitis testified that each of Bailey's statements to clients was false, and explained her subjective perception of Bailey's charge of "misconduct" as "implying ... that I had performed unethically before my departure."
Kosmitis filed the depositions of two clients, Mary and Cheryl Williams, mother and daughter, whose medical malpractice case on behalf of another family member was assigned to Kosmitis while she was working for Bailey. Mary Williams testified:
I went in to ask [Bailey] some questions about the case and this was after Lawyer Kosmitis had left his practice. Then I talked to him about Lawyer Kosmitis working with him on this case.
Q. What did he say?
A. He told me that she wasn't the one that worked on the case, he was, and that he had [taken] the depositions from all of the witnesses, and he said she was just working with him, not handling the case. And he said she was just a gopher, someone that just [did] his running for him and answering the telephone when he needed someone to answer the phone.

Q. This was a conversation in his office?
A. Yes.
Q. And who else was present?
A. My daughter Cheryl....
Q. Did he say anything else about Ms. Kosmitis?
A. He said that shethe reason she had left that office is because she wasn't doing her work. He had given her work to do and she wasn't doing it. She let her work pile up on her. That's why she was no longer with him.... [H]e said that he only hired Lawyer Kosmitis as a favor [to] someone else. (Our emphasis and brackets.)
Cheryl Williams corroborated her mother's testimony, adding that Bailey "hit the desk" when Cheryl and her mother raised the possibility of Kosmitis continuing to work on the case, saying,
No. I will not work with her. She is not capable of handling the case. That was one of the main reasons why I fired her. She is not a real lawyer. She was mainly my gopher. She sat down and listened to me whenever I was trying cases in the courtroom. She was just someone to take notes and ... run errands and answer the phone whenever I needed something done. (Our emphasis.)
Notwithstanding Bailey's remarks, the Williamses thereafter took their case from Bailey's firm to Kosmitis's new practice and retained her as the sole lawyer to handle the case. Each testified that Bailey's remarks did not cause them to lose confidence or trust in Kosmitis's professional abilities, or to think any less of her.
In the pre-trial order filed before the motion for summary judgment was heard, Kosmitis asserted that Bailey's defamatory statements had "prejudiced and damage[d her] in *1186 her relationship with her clients," but said she "will not pursue her claim for loss of income and stipulates no loss of income as a result of [the] defamatory statements." In her answers to Bailey's interrogatories, which Bailey filed in the record with his motion for summary judgment, Kosmitis declared her intention to seek "full compensation and reasonable damages allowable by the law for damages to her reputation, humiliation, embarrassment, mental anguish, and loss of economic opportunity." She named herself and each of the alleged recipients of the statements as potential witnesses at trial.

TRIAL COURT RULING
The trial court found Bailey's statement to Mary and Cheryl Williams that Kosmitis was "not a real lawyer" to be defamatory per se, as it suggested that she was practicing law without a license, for which criminal sanctions are imposed by La.R.S. 37:213. This finding caused the court to conclude that Kosmitis was entitled to a presumption of falsity, malice and injury. Expressing some understandable perplexity as to how a trial court is to "weigh evidence" at the summary judgment stage of proceedings to determine if the plaintiff can produce sufficient evidence at trial to prove the elements of the case with convincing clarity, the trial court found that the deposition testimony of Kosmitis and the Williamses, "[i]f believed by the trier of fact, could lead to liability on the part of defendant." Without squarely addressing each of the statements allegedly made by Bailey to clients other than Mary and Cheryl Williams, the court denied Bailey's motion for summary judgment.

DISCUSSION
Though not squarely addressed by the trial court, Bailey's contention that any statements he made to clients were protected by the attorney-client privilege is without merit. That privilege is purely personal to the client, and exists solely for the client's benefit, to encourage the client to confide in the lawyer without fear that the confidential communications could be used against the client by his [the client's] adversaries. The privilege may only be invoked by the client, or by the lawyer on the client's behalf. It may not be invoked by the lawyer on his own behalf to protect the lawyer in the lawyer's dealings with his own adversaries. See generally former La.R.S. 13:3734.3, repealed effective January 1, 1993; La.C.E. art. 506; Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138 (La.1987); State v. Green, 493 So.2d 1178 (La.1986); State v. Rankin, 465 So.2d 679 (La.1985).
Whether or not one or more of Bailey's statements to Mary and Cheryl Williams may be construed as defamatory per se, we have no difficulty concluding that the various statements emphasized above are objectively capable of having a defamatory meaning. Bailey's statements were made within the context of being communicated by a fellow lawyer to a client who had had professional dealings with Kosmitis in a pending case, and who perhaps would consider having future dealings with her as well. In this context, Bailey's statement that he "fired" Kosmitis for "misconduct," coupled with his unequivocal assertions that she "is not capable of handling" the client's case because "she is not a real lawyer," but merely a "gopher" who simply "answered the phone" for Bailey, may objectively be regarded as having been designed to lower Kosmitis in the estimation of her clients, whether past or future. See and compare Lemeshewsky, Freeman and Zellinger, all cited supra.
As to Bailey's alleged statements to clients, the elements of publication and defamatory meaning are sufficiently established for purposes of determining the propriety of summary judgment.
Assuming without deciding that none of Bailey's statements may be considered defamatory per se, and thus that no other elements of defamation may be presumed, we cannot agree with Bailey's contention that the element of injury is negated by Kosmitis's stipulation of no lost income and by her witnesses, Mary and Cheryl Williams, having said that Bailey's statements did not adversely affect their opinion of Kosmitis. The element of injury may consist entirely of mental anxiety and suffering subjectively experienced by the plaintiff, even in the face of *1187 positive testimony by one or more third parties that their opinion of the plaintiff or her reputation was not diminished by the defendant's remarks. See Firestone, Garrett and Trahan, all cited supra. Kosmitis certainly has personal knowledge of the subjective damages she claims to have suffered as a result of Bailey's statements. Her availability as a trial witness satisfies the showing of evidentiary strength based on personal knowledge of the element of injury.
The remaining elements of Kosmitis's casefalsity and maliceand the related element of good faith which Bailey must show to invoke the qualified privilege of Roberts, Wright and Boyd, cited supra, are genuinely disputed "subjective" facts which are not capable of resolution by summary judgment under the circumstances of this case. These factual issues which are material to the defamation claim in this case cannot be resolved by affidavit, in isolation from the separate but factually connected breach of contract claim which is not a part of the summary judgment motion. Resolution of these factual issues, for either or both claims, will depend heavily on the trier of fact's credibility assessments, particularly of the litigant-witnesses.
Such "subjective" facts are arguably involved in all cases asserting defamation claims and qualified privilege defenses, including cases where summary judgment was upheld, such as Sassone, Wright and Zellinger. The decision whether such factual issues are "genuinely disputed," however, must be made on a case by case basis, according to the circumstances and the content of each particular record.
The summary disposition of the defamation claim in Sassone was premised on the court's finding that each of the statements at issue lacked an objectively defamatory meaning. 626 So.2d at 352. The Sassone court expressly declined to consider whether any of the statements were false, or whether the plaintiffs were required to show actual malice, saying, "[M]alice and falsity do not become pertinent until it is determined at the outset whether the communications were defamatory to these plaintiffs." 626 So.2d at 355; emphasis in original. In essence, the court's finding that the statements were not actionable in an objective sense made summary judgment appropriate regardless of how the subjective factual issues were posed or ultimately resolved.
The defendant-employer's good faith in having made statements about the reason for the plaintiff's discharge was implicitly, though not explicitly, found to be undisputed in Wright, 602 So.2d at 775. The summary adjudication in Zellinger involved statements about an attorney which were deemed to be reasonable inferences drawn from facts that were "a matter of common knowledge ... and ... public record." 28,127 at p. 3, 683 So.2d at 731.
According to the pre-trial order in this record, which encompasses both the defamation and the breach of contract claims, the only undisputed facts are these:
Kosmitis and Bailey entered into a contract on October 9, 1991.
The contract was terminated on or about October 7, 1992.
 Kosmitis did not work or have permission to work on any file left in Bailey's office after her departure which was not subsequently transferred to her new office.
Bailey did not work or have permission to work on any of the files transferred to Kosmitis's new office after her departure.
All other material facts, including the nature of the contract and the reason or reasons for its termination, are disputed.
Within the context of this record, Bailey's assertions in his deposition and affidavit filed in support of summary judgment that any statements he made to clients about Kosmitis were true and were made without malice, in good faith, with a reasonable belief in their truth, are merely his conclusions drawn from facts which are clearly in dispute. This is not a case where the underlying facts are "essentially undisputed" and inevitably lead to only one conclusion, even as to ostensibly "subjective" facts. Compare Smith v. Our Lady of the Lake Hospital, supra.
The documents filed by Bailey in support of summary judgment do not purport to negate or deny that Bailey said what Kosmitis *1188 alleges he said to each of the various clients named in the record, including but not limited to Mary and Cheryl Williams. Bailey simply contends any such statements were either true or privileged. Under the circumstances of this record, we find that the statements to clients allegedly made by Bailey are objectively capable of having a defamatory meaning to this plaintiff. In contrast to the statements allegedly made to Gilsbar, OES and the Riverboat Gaming Commission, discussed above, the record contains an affirmative showing of publication with respect to Bailey's alleged statements to clients. The element of injury is provable by Kosmitis's testimony alone.
The remaining material factsfalsity, malice and good faithare subjective and are genuinely disputed. Bailey's documents in support of summary judgment are insufficient to show that there is "no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.C.C.P. art. 966.
Unlike the plaintiffs in Sassone, Kosmitis has made a strong enough evidentiary showing of the objective elements of her defamation claims arising from Bailey's alleged statements to clients to proceed to trial on these claims, including but not limited to the claims arising from statements to Mary and Cheryl Williams.

DECREE
The judgment denying Bailey's motion for summary judgment on the defamation claims is reversed in part, as to the statements allegedly made by Bailey to Gilsbar, Inc., the Louisiana Office of Employment Security and investigators for the Riverboat Gaming Commission. As to those statements, the motion for summary judgment is granted and those defamation claims are dismissed with prejudice. In all other respects, and at Bailey's cost, the trial court judgment is affirmed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
HIGHTOWER, Judge, concurring.
I strongly join that part of the discussion, and the denial of summary judgment, concerning the statements allegedly made to clients. As for the reversal resulting in dismissal of the other defamation claims, I concur in the result only.
NOTES
[1] Defamation claims were more conducive to summary disposition than other claims even before the legislature amended La.C.C.P. art. 966 to "favor" summary judgment in all cases, provided the mover satisfies his burden of proof. Acts 1996, No. 9. We apply the specific defamation standard here without considering whether the more general standard of the amended article should be applied retroactively.
[2] One of these statements was allegedly made to a chiropractor who apparently rendered treatment to a client of the firm. For simplicity, we refer to the alleged recipients of the various statements collectively as "clients."