765 So.2d 1214 (2000)
James L. McCONATHY, Jr., Plaintiff-Respondent,
v.
Randy J. UNGAR, et al., Defendants-Applicants.
No. 33,368-CW.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*1215 Mayer, Smith & Roberts by David F. Butterfield, Shreveport, Counsel for Applicant, Randy J. Ungar.
Wiener, Weiss & Madison by John M. Madison, Jr., Mark L. Hornsby, M. Allyn Stroud, Shreveport, Counsel for Applicants, Debra B. Hayes and Lawfirm of Fleming, Hovenkamp & Grayson.
Hudson, Potts & Bernstein, L.L.P. by Robert M. Baldwin, Monroe, Counsel for Respondent.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, J.
In this defamation action, the defendants' notification to insurance policyholders of a class action lawsuit against New York Life Insurance Company is claimed to have defamed the plaintiff, a selling agent for the company. Following the trial court's rejection of defendants' motion for summary judgment, we granted supervisory writs of review. Finding no defamatory words directed to the plaintiff in defendants' notification to policyholders, we reverse the trial court's ruling and grant judgment in favor of defendants, dismissing plaintiffs claims.

Facts and Procedural History
In July 1995, a group of New York Life Insurance Company ("NYLIC") life insurance policyholders filed a class action lawsuit against NYLIC in New York state court. The allegations of the suit included claims that NYLIC misled policyholders regarding the nature of their policy benefits. The class of plaintiffs was nationwide and included persons who had purchased certain NYLIC life insurance policies between January 1, 1982 and December 31, 1994. In August 1995, the parties filed a proposed settlement of the dispute with class-members being afforded until October 31, 1995 to decide whether to participate in the settlement or to opt-out. The notice of the proposed settlement was mailed to policyholders nationwide, including Louisiana policyholders.
Some proposed members of the class were confused by or unhappy with the terms of the settlement. Louisiana attorney Randy J. Ungar, of the law firm of Randy J. Ungar and Associates, filed a lawsuit against NYLIC in Orleans Parish on behalf of a proposed class of policyholders. In connection with this lawsuit, the following letter (hereinafter the "Letter") was mailed by Ungar to approximately 2,950 NYLIC policyholders in Louisiana:

"Randy J. Ungar ATTORNEY AT LAW 111 Rue Iberville, Ste. 400 New Orleans, LA 70130
Dear Policyholder:
There is a class action lawsuit in New York involving certain life insurance sold by New York Life Insurance Company called Willson, et al v. New York Life Insurance Company, et al. If you purchased a Universal or Whole Life Insurance Policy from New York Life from 1982 to 1994, you are subject to this class action and may have received a *1216 notice regarding the proposed class action settlement.

WHAT IS BEING DONE IN WILSON AFFECTS YOUR RIGHTS AND BINDS YOU TO A GROSSLY INADEQUATE SETTLEMENT. As the owner of a New York Life policy, you are entitled to the maximum financial recovery. You were sold life insurance policies, and certain representations were made regarding their value, and now the value of those policies is far less than you were told.
Judge Ward in a case entitled Speaks, et al v. New York Life Insurance Company, filed in New Orleans, has given us the right to contact you to advise you of your rights regarding this matter.
We have reviewed the settlement being offered in Willson and find it to be grossly inadequate and basically fraudulent. New York Life will give you (1) another one of their policies to replace your old, worthless policy; (2) they will loan you money to buy new policies from them to replace the worthless policies you now own; or (3) you can arbitrate your case, but you are forced to prove your entire case and can only recover the amount of your policy. You have no opportunity to recover against New York Life for their blatantly fraudulent actions.
We can provide you with opportunity to recover what you are rightfully entitled to recover. We have enclosed an opt out form. If you do not sign it and return it to the New York Court before October 31, 1995, YOU WILL BE BOUND BY THIS INADEQUATE SETTLEMENT AND WILL BE FORCED TO THE REMEDIES DETERMINED BY THE NEW YORK COURT.

We believe you will benefit most from declining the Willson settlement and opting out. We are willing to represent you, here in Louisiana, on a contingency basis, in the Speaks action.
If you have any questions, please call Mike Tisman at 1-800-654-7139 and he will be prepared to assist you in any way possible.
 Sincerely,
 x/Randy J. Ungar"
After the Letter was sent, the Orleans District Court ordered the attorney to send a second letter to the recipients of the first Letter. This second letter states that the first Letter was not authorized by court order, that NYLIC policies still in force were not worthless as the original Letter inaccurately suggested, that the "grossly inadequate" and "basically fraudulent" descriptions of the New York settlement were Ungar's opinion and that the original Letter failed to comply with Rule 7.2 of the Louisiana Code of Professional Responsibility in that it did not bear the label "Advertisement."
On August 13, 1996, James McConathy, a NYLIC agent from Monroe, filed this lawsuit against Ungar and Randy J. Ungar and Associates. Additionally, Deborah B. Hayes, a Texas attorney, who is alleged to have drafted the Letter, and her law firm, Fleming, Hovenkamp and Grayson ("FH & G") are named as defendants. McConathy claimed that Ungar's original Letter caused him harm. Specifically, McConathy asserts in his petition:
As a result of the actions of defendants, plaintiff has had many policies which he sold canceled and has suffered great losses in sales commissions and other income entitlements. Additionally, plaintiffs future ability to sell insurance and his reputation for honesty and integrity have been severely damaged by defendants' actions.
Hayes, FH & G and Ungar each filed motions for summary judgment. They urged that Ungar's Letter was not "of and concerning" McConathy and therefore not defamatory. Further, Ungar's motion asserted that the communication was subject to a privilege, either absolute or qualified, and thus was not actionable. McConathy also filed his own motion for partial summary judgment on the question of the *1217 defendants' liability, centering the defamation on the Letter's charge of the worthlessness of the NYLIC policies. McConathy characterized the class of persons defamed by the Letter as those Louisiana NYLIC agents who sold insurance policies to employees of LSU Medical Center and he asserted that he was among these few agents.
In written reasons for judgment, the trial court denied all the motions for summary judgment. The court found in rejecting defendants' motions that a material issue of fact remained regarding the size of the group defamed by the Letter. Further, the trial court held that Louisiana law did not recognize a privilege for the content of Ungar's Letter. Finally, the court rejected McConathy's motion on the grounds that he had failed to show that there was no genuine issue of material fact regarding whether the Letter contained defamatory words.
From these rulings, all parties sought supervisory review, and this court granted review of the rejection of defendants' motions for summary judgment.

Defamation
There is no specific legislative pronouncement on defamation in Louisiana. Within the ambit of La. C.C. art. 2315, the jurisprudence requires that the plaintiff must prove defamatory words; publication; falsity; malice, actual or implied; and resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980); Douglas v. Thomas, 31,470 (La.App.2d Cir.2/24/99), 728 So.2d 560, writ denied, 99-0835 (La.5/14/99), 741 So.2d 661. If even one of these elements is lacking, the cause of action fails. Douglas, supra.
The threshold issue in a defamation action is whether the complained of words are defamatory, that is, capable of a defamatory meaning. Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir. 1975). This court has defined a defamatory statement as follows:
A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. (Citations omitted.)
Brown v. News-World Publishing Corp., 245 So.2d 430, 432 (La.App. 2d Cir.1971).
In one early case, the Louisiana Supreme Court recognized that when a small group is defamed, an individual member may establish a cause of action for defamation even though he is not specifically named or identified. In Levert v. Daily States Pub. Co., 123 La. 594, 49 So. 206 (1909), the court held that plaintiff, a member of the Board of Administrators of Tulane University, had a cause of action for defamation when a newspaper article accused the Board of Administrators of favoritism and misconduct. Even though plaintiff was not specifically named in the article, the court found that the libel not only assailed the corporate action of the Board of Administrators, but impeached the integrity of every individual member who participated in the proceeding.
In another early Louisiana case, the targeted subject of the defamatory words was likewise considered. In Hyatt v. Lindner, 133 La. 614, 63 So. 241 (1913), the defendant sent a letter to the mayor of New Orleans implying that a certain building was a house of ill-repute when in fact it *1218 was the residence of several families. The court held that there was no cause of action in defamation because the letter referred distinctly to the house, irrespective of who the residents might be and further stated, "The situation would have been different if the imputation contained in the letter had been one necessarily applying to each and every occupant of the house ..." Id. at 245. In reaching its decision, the court quoted the following from an authority at that time on libel and slander:
The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before.
Id. at 244.
This jurisprudence is consistent with the Restatement (second) of Torts, § 564A (1977) which states:
One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if:
(a) the group or class is so small that the matter can reasonably be understood to refer to the member, or
(b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.
Since the Letter's only direct reference to a party is to NYLIC, we note that a corporation, as a separate legal entity, can be defamed. The Restatement (second) of Torts, § 561 (1977) states in pertinent part,
One who publishes defamatory matter concerning a corporation is subject to liability to it
(a) if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it ...
A corporation has a business reputation and may be defamed in this respect. See, Economy Carpets Manufacturers & Distributors, Inc. v. Better Business Bureau of Baton Rouge, 361 So.2d 234 (La.App. 1st Cir.1978); writ denied, 362 So.2d 1387 (La.1978); WHC, Inc. v. Tri-State Road Boring, Inc., 468 So.2d 764 (La.App. 1st Cir.1985).

Summary Judgment
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2).
Even before the enactment of the above quoted language of La. C.C.P. art. 966(C)(2) in 1997, our jurisprudence recognized that due to the constitutional considerations involved in defamation actions, summary adjudication is a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten First Amendment liberties. Sassone v. Elder, 626 So.2d 345 (La.1993); Kosmitis v. Bailey, 28,585 (La.App.2d *1219 Cir.12/20/96), 685 So.2d 1177; and Bell v. Rogers, 29,757 (La.App.2d Cir.8/20/97), 698 So.2d 749. In a defamation setting, plaintiff's allegations are tested through summary judgment proceedings to determine whether the plaintiff will likely be able to prove his factual assertions with convincing clarity at trial. Kosmitis, supra at 1179.

Discussion
McConathy argues that he was one of nine or ten agents involved in selling the policies to the 2,950 Louisiana recipients of the Letter. Those recipients throughout the state were employees of the State of Louisiana and LSU Medical Center. McConathy focuses his claims particularly on the fourth paragraph of the Letter which charged that the policies owned by NYLIC policyholders were "worthless." The publication and falsity of this charge of the worthlessness of the policies is allegedly established by the Letter and the follow-up letter of retraction which Ungar was required to mail by the Orleans District Court.
From our review of the alleged defamatory words regarding the worthlessness of the policies, we do not find that those words can be understood in the context of their publication to be directed at McConathy or toward a small group of insurance salesmen, including McConathy, selling NYLIC policies in Louisiana. First, the "defamed" policies are the product of NYLIC. McConathy was not a party contractually obligated for the NYLIC policies of insurance. Next, the worthlessness of the policies, which is the basis of the falsity in this defamation case, could only be caused by NYLIC. The Letter indicates that despite "certain representations" regarding the policy benefits or "their value," those economic values could not be realized through the ownership of the policies. The precise reason for the policies' worthlessness, whether because of the corporation's insolvency or the economic terms and provisions of the contract, is not explained in the Letter. Regardless of the unclear reason for the policies' worthlessness, NYLIC would be the party that would cause and would be responsible for the value loss to the policyholders. Thus, the defamatory charge is imputed to NYLIC. Third, although he was a selling agent for NYLIC,[1] McConathy is not an officer or director of NYLIC entrusted with decision making authority for the corporation. The validity and effectiveness of the NYLIC insurance policies result from those decision makers at the corporation who determine the terms of the policies and otherwise direct the corporation regarding its obligations under the contracts of insurance. McConathy has not shown himself to be a member of the group of persons responsible for the validity and worth of the policies. Moreover, even that group of decision makers, who acted for this large national corporation, is not clearly identified and understood to be defamed personally by the Letter.
In the second paragraph of the Letter, policyholders were told: "[y]ou were sold life insurance policies, and certain representations were made regarding their value, and now the value of those policies is far less than you were told." Significantly, McConathy does not assert that these are the defamatory words directed at him upon which his claim is based, even though presumably he would have made representations to his clients about the economic benefits or value of the policies. Additionally, while this sentence in the Letter's second paragraph discusses representations which might have included McConathy's earlier sales representations, the sentence concludes that because of some unidentified problem with the policies, "now the value ... is far less than you were told." (Our emphasis). The worthlessness of the policies, therefore, can reasonably be interpreted as having arisen *1220 after the time of McConathy's initial sales representations and unrelated to those representations.
The Letter's target, whose identity is express and not implied, is NYLIC. NYLIC policies are labeled "worthless." In the two lawsuits discussed in the Letter, NYLIC is the defendant. The proposed settlement of the New York lawsuit is unmistakenly identified as NYLIC's offer, which the Letter describes as "grossly inadequate and basically fraudulent." Paragraph four of the Letter concludes that "[y]ou have no opportunity to recover against NYLIC for their blatantly fraudulent actions." With one entity as the clear target of the Letter's defamatory language which plaintiff now singles out, it cannot be reasonably concluded that the same libelous language was also implicitly directed to a separate, unspecified group of persons unnamed in the Letter. Thus, we find no genuine issue of material factthese words do not impart defamatory meaning directed to McConathy.

Conclusion
For the foregoing reasons, we find there is no genuine issue of material fact and that McConathy has not been defamed. We therefore find that the trial court's denial of defendants' motions for summary judgment was error. Accordingly, we reverse and render judgment dismissing McConathy's claims against the defendants. Costs of appeal are assessed to McConathy.
RULINGS OF TRIAL COURT REVERSED; JUDGMENT RENDERED AS TO DEFENDANTS.
NOTES
[1] McConathy's affidavit states that he is an "independent insurance agent" which indicates that he is not an employee of NYLIC.