STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1344


JANICE TRAHAN ALLEN

VERSUS

THOMSON NEWSPAPERS, INC., ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2000-0927
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.


AFFIRMED.



James Richard Leonard, Jr.
P. O. Box 82367
Lafayette, LA 70598-2367
(337) 232-0823
Counsel for Plaintiff/Appellee
  Janice Trahan Allen

**Kyle Schonekas**
**Thomas M. McEachin**
**Joelle Lee Flannigan**
**Schonekas, Winsberg, Evans & McGoey, LLC**
**400 Poydras, Suite 1440**
**New Orleans, LA 70130**
**(504) 680-6050**
**Counsel for Defendant/Appellant**
**Richard Schmidt**

**Timothy Alan Maragos**
**Caffery Plaza, Suite 100**
**4023 Ambassador Caffery Pkwy**
**Lafayette, LA 70503**
**(337) 988-7240**
**Counsel for Defendant/Appellee**
**State Farm Fire & Casualty Co.**

GREMILLION, Judge.

The defendant, Richard J. Schmidt, appeals the trial court's grant of summary judgment in favor of his homeowner insurer, State Farm Insurance Company, and dismissing the claims of the plaintiff, Janice Trahan Allen, against it with prejudice, but reserving all of her claims against Schmidt. For the following reasons, we affirm.

**FACTS**

This matter stems from the highly publicized case in which Schmidt, a Lafayette gastroenterologist, was convicted of attempting to murder his lover, Allen, by injecting her with the HIV virus. In this instance, Allen filed suit against various defendants as a result of an interview given by Schmidt to a reporter for ABC News, in which he stated that Allen was a "stalker." Subsequent to the airing of this interview on national television, a story was published in The Advertiser, a Lafayette newspaper, bearing the headline, "Schmidt Calls Victim Stalker." As a result of the interview and the story, Allen filed suit against the paper's publisher and the editor and reporter responsible for the February 20, 1999 story, as well as against Schmidt. She settled her claims against the publisher, editor, and reporter, dismissing them from the suit.

Allen later amended her petition to name State Farm as an additional defendant. State Farm had issued a policy of homeowners liability insurance to Schmidt, which Allen alleged provided coverage for the damages she suffered as a result of Schmidt's defamatory statement. After answering Allen's petition, State Farm filed a motion for partial summary judgment alleging that Schmidt's

1

homeowners policy excluded coverage for claims arising from defamation. Following a hearing, the trial court granted the motion and rendered a judgment dismissing State Farm from this suit. This appeal by Schmidt followed.

## ISSUES

On appeal, Schmidt argues that the trial court erred in finding that Allen's claims are excluded from coverage under his homeowner's policy with State Farm and that it erred in failing to find that State Farm has a duty to defend him. Allen has also raised an assignment of error on appeal, but since she failed to answer Schmidt's appeal, we need not address that assignment. La.Code Civ.P. art. 2133.

## STANDARD OF REVIEW

The standard of review pertaining to summary judgment is well established, as provided by La.Code Civ.P. art. 966. Accordingly, we will undertake a de novo review of the matter. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191.

## DEFAMATION

In his first assignment of error, Schmidt argues that the trial court erred in finding that Allen's claims, if proven, would be excluded from coverage under his homeowners policy. The State Farm policy issued to Schmidt contains a provision excluding coverage for bodily injury "which is either expected or intended by an insured" or "to any person . . . which is the result of willful and malicious acts of an insured."

The supreme court, in the recent case of *Costello v. Hardy*, 03-1146, pp. 12-14 (La. 1/21/04), 864 So.2d 129, 139-41 (footnotes omitted), explained the law

2

pertaining to defamation as it stands in Louisiana:

> Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. *Fitzgerald v. Tucker*, 98-2313, p. 10 (La.6/29/99), 737 So.2d 706, 715; *Trentecosta v. Beck*, 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559; *Sassone v. Elder*, 626 So.2d 345, 350 (La.1993). "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta*, 96-2388 at 10, 703 So.2d at 559 (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)). The fault requirement is often set forth in the jurisprudence as malice, actual or implied. *See, Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La.1980) (which also considers falsity as a fifth and separate element); 12 WILLIAM E. CRAWFORD, LOUISIANA CIVIL LAW TREATISE: TORT LAW § 17.4 at 312 (2000). Thus, in order to prevail on a defamation claim, a plaintiff must prove "'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Trentecosta*, 96-2388 at 10, 703 So.2d at 559 (quoting *Sassone*, 626 So.2d at 350). If even one of the required elements of the tort is lacking, the cause of action fails. *Douglas v. Thomas*, 31,470, p. 3 (La.App. 2 Cir. 2/24/99), 728 So.2d 560, 562[,] *writ denied*, 99-0835 (La.5/14/99), 741 So.2d 661; *Kosmitis v. Bailey*, 28,585, p. 2 (La.App. 2 Cir. 12/20/96), 685 So.2d 1177, 1180.

> Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule. *Fitzgerald*, 98-2313 at 11, 737 So.2d at 716; *Trentecosta*, 96-2388 at 10, 703 So.2d at 559 (citing RESTATEMENT (SECOND) OF TORTS § 559 cmt. (e) (1977)). Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory. *Fitzgerald*, 98-2313 at 11, 737 So.2d at 716. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. *Sassone*, 626 So.2d at 352. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. *Id.* To be actionable, the words must be communicated or "published" to someone other than the plaintiff. *Kosmitis*, 25,585 at 3, 685 So.2d at 1180.

> In Louisiana, defamatory words have traditionally been classified into two categories: those that are defamatory per se and those that are

susceptible of a defamatory meaning. *Lemeshewsky v. Dumaine*, 464 So.2d 973, 975 (La.App. 4 Cir.1985). Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180; *Lemeshewsky*, 464 So.2d at 975; 12 CRAWFORD, LOUISIANA CIVIL LAW TREATISE: TORT LAW § 17.8 at 315. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180. The element of injury may also be presumed. *Id.*

When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180. In cases involving statements made about a public figure, where constitutional limitations are implicated, a plaintiff must prove actual malice, *i.e.*, that the defendant either knew the statement was false or acted with reckless disregard for the truth. *See, Romero v. Thomson Newspapers (Wisconsin), Inc.*, 94-1105, p. 5 (La.1/17/95), 648 So.2d 866, 869.

In *Keathley v. State Farm Fire and Casualty Insurance Co.*, 594 So.2d 963 (La.App. 3 Cir. 1992), we interpreted language identical to that found in Schmidt's homeowners' policy. In defining "willful and malicious," we stated:

Since we have not found many cases interpreting the language in the second part of the exclusionary clause, we will apply the general and common meaning of the terms involved. The term willful has been defined, and this term has been held to apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended.

"The usual meaning assigned to this term is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is usually accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." See Prosser, Law of Torts, Section 34, at pages 187-189 (3d Ed.1964). *Cates v. Beauregard Electric*

4

> *Cooperative, Inc.*, 316 So.2d 907 (La.App. 3d Cir.1975);
> *Prosser v. Crawford*, 383 So.2d 1363 (La.App. 3d
> Cir.1980).

The term malicious, also used in the second part of the exclusionary clause, has not been defined or used in any cases like the term "willful". In order to determine if defendant's conduct falls under this second prong, we must use the common meaning of the word "malicious". The general meaning of this term as found in Black's Law Dictionary 5th ed. is as follows:

> "Characterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse. See also Malice; Willful."

*Id.* at 965.

*Keathley* was interpreted by the first circuit, in *Menson v. Taylor*, 99-300, pp. 8-9

(La.App. 1 Cir. 4/17/00), 764 So.2d 1079, 1084:

> Although acknowledging that not many cases interpreted the "willful and malicious" exclusionary clause, the court noted that the term "willful" "has been held to apply to conduct that is still negligent, rather than intentional, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. *Keathley*, 594 So.2d at 965. The court also noted that the term "malicious" is "[c]haracterized by, or involving, malice; having, or done with wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." *Black's Law Dictionary* 958 (6th ed.1990); *Id.*

> Under the exclusion for willful and malicious acts, it is immaterial whether the defendant intended the actual resulting injuries. Rather this exclusion applies to conduct showing the defendant acted with a conscious indifference to the consequences with knowledge that harm would follow. The "malicious" prong of the exclusion applies to conduct that is intentional, wrongful, and without just cause or excuse. *Keathley*, 594 So.2d at 966.

In this instance, Schmidt stated in his interview with ABC News that

Allen had stalked him. In his deposition, he was asked:

Q.   Looking now at the second paragraph and identified as

statement No. 2.  Quote, "'She was stalking me,'" unquote, "Schmidt said."  Did you make that statement?

A.  Again, I can't verify the definite accuracy [of the newspaper story] or not.

Q.  Do you think you made that statement?

A.  I may have.

Q.  Is that statement consistent with your thoughts and feelings with regard to the case?

. . . .

A.  I believe so.

Q.  Skipping ahead to the third highlighted statement which reads, quote, "'I would say [Allen] was spying, but stalking is the proper word,'" unquote, "Schmidt said."  Did you make that statement?

A.  Again, I can't verify the accuracy of that.

Q.  Do you think you said that?

A.  I very likely would have.

Q.  Is that statement consistent with your thoughts and feelings with regard to the case?

. . . .

A.  Yes.

. . . .

A.  – to that third statement?  I just want to clarify that it was my opinion that with her jealously and her following me and tracking my activities, monitoring my activities, that in my mind that constituted stalking, damaging my – damaging me personally and professionally.

Schmidt stated that he did not believe that the newspaper article had misquoted his statements from the television interview.  He further testified that it was his opinion

6

that Allen was a stalker.

Stalking is a crime defined pursuant to La.R.S. 14:40.2 as the "willful, malicious, and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress." Although Schmidt may not have known that stalking was a crime, he has imbued Allen with criminal behavior; thus, his statement was defamatory per se. Since we find his statement to be defamatory per se, malice, whether actual or implied, on the part of Schmidt is presumed.

"Actual malice exists if the statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *City of Natchitoches v. Employers Reinsurance Corp.*, 02-147, p. 5 (La.App. 3 Cir. 6/5/02), 819 So.2d 413, 418 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26 (1964)). "Reckless disregard occurs when the defendant publishes the statement despite having a high awareness of the statement's probable falsity." *Id.* (citing *Davis v. Borskey*, 94-2399 (La. 9/5/95), 660 So.2d 17).

Since actual malice on the part of Schmidt is presumed, it is presumed that he implicated her with criminal behavior intentionally, wrongfully, and without just cause. Accordingly, we find that State Farm's homeowners liability policy excludes coverage for any damages which Allen may have suffered as a result of Schmidt's statement. The judgment of the trial court granting summary judgment on this issue is affirmed.

## DUTY TO DEFEND

In his second assignment of error, Schmidt argues that the trial court

7

erred in failing to find that State Farm owed him a duty of defense in this lawsuit. We disagree. State Farm's policy states with regard to coverage pertaining to personal liability:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

An insurance policy is a contract between the parties and is interpreted pursuant to the general rules of contract interpretation. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577. A plain reading of the policy reveals that State Farm need only provide a defense to an insured, who causes bodily injury, if policy coverage applies. As previously stated, State Farm's policy provides an exclusion for bodily injury "to any person . . . which is the result of willful and malicious acts of an insured." We have already found that actual malice on the part of Schmidt is presumed via his defamatory per se statement; thus, coverage for any damages stemming from the statement is excluded. As coverage is excluded, so is State Farm's duty to provide Schmidt with a defense. Accordingly, this assignment of error is dismissed as being without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting

8

summary judgment in favor of State Farm and dismissing Allen's claims against it with prejudice is affirmed. The costs of this appeal are assessed to the defendant-appellant, Richard J. Schmidt.

**AFFIRMED.**