STEWART, J.
12Markel American Insurance Company (“Markel”) and Thomas J. Jones along with his adult children, Michael Jones and Tammy Williams (the “Jones family”), appeal a judgment ordering Markel to pay a penalty of $100,000 and attorney fees of $10,000 due to its bad faith and arbitrary and capricious failure to settle the undisputed amount of an uninsured / underin-sured (“UM”) claim. Markel asserts that the trial court erred in finding that it had received satisfactory proof of loss to trigger a tender and that its failure to deposit $200,000 into the registry of the court as of *1019 July 5, 2007, was arbitrary and capricious. The Jones family seeks an increase in the penalty and attorney fees awarded. Finding no manifest error or abuse of discretion, we affirm the trial court’s judgment and award an additional attorney fee to the Jones family for the appeal.
FACTS
lsOn June 24, 2006, Thomas Jones and his wife Mary were involved in a vehicular accident that occurred when a 1991 Mercury Sable driven by Bertha Johnson turned left in front of the motorcycle they were riding. Thomas sustained serious injuries, as did Mary, who died shortly after the accident. Johnson, who was intoxicated, was solely at fault in the accident.
On August 31, 2006, the Jones family filed a suit for damages against Johnson, Linda Barral, who owned the vehicle that was driven by Johnson, and Barral’s insurer, Universal Casualty Insurance Company (“Universal”). Answers by Barral and Universal asserted that coverage for the Mercury Sable had been deleted from the policy prior to when the accident occurred. Because there was no coverage, Universal was later dismissed from the suit by summary judgment.
On November 15, 2006, the plaintiffs amended their petition to name Markel, Thomas’s UM insurer for the motorcycle, as a defendant. Markel had previously been notified by counsel for the Jones family of a potential UM claim and that the value of Thomas’s own personal injury damages, as well as the survival and wrongful death damages, would exceed all available policy limits. Markel’s policy provided UM coverage in the amounts of $100,000 per person / $300,000 per accident. [4The parties disagreed as to the amount of coverage available. Markel asserted that coverage for the accident was limited to $200,000, whereas the Jones family asserted that the full $300,000 was available under the policy.
Another issue arose when the Jones family received notice of liens for the recovery of healthcare expenses related to Thomas and Mary’s treatment after the accident. Medfax Recovery, L.L.C. (“Medfax”), on behalf of St. Francis Medical Center, Inc. (“St.Francis”), where Thomas and Mary were treated following the accident, gave notice of the privilege under La. R.S. 9:4751 et seq., asserting the right to recover allegedly unpaid medical expenses from the insurance proceeds ahead of the Jones family. Under provisions of the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C.A. § 1001, et seq., Ingenix Subrogation Services (“Ingenix”) on behalf of United Healthcare Services (hereafter “United”), the claim fiduciary for the El Paso Corporation Employee Health Benefit Plan, similarly sought to recover medical benefits paid on behalf of Thomas and Mary. Review of the record shows that the amounts claimed by Medfax and Ingenix kept changing.
|sBy the end of November 2006, Markel was prepared to tender $200,000 to the Jones family. However, an issue arose between Markel and the Jones family as to whether to include Ingenix, who had notified Markel of its ERISA lien, on any check tendered to the Jones family. By letter dated December 18, 2006, counsel for Markel asked that either Ingenix be included on the check or that counsel for the Jones family provide a letter stating that he and the Jones family would “satisfy all liens out of the unconditional tenders.” In a reply letter dated December 19, 2006, counsel for the Jones family made it clear that they did not want Ingenix included on the check and advised that Ingenix’s interest in the proceeds would be taken into consideration upon disbursement. Not *1020 satisfied with that assurance, Market’s counsel on January 9, 2007, requested a “stronger letter” to protect Markel from any claim by Ingenix.
Discussions between the parties continued until May 8, 2007, when counsel for the Jones family notified Markel that unless it made a “prompt unconditional tender into the registry of the court,” the petition would be amended to bring in the lienholders and to seek statutory penalties and attorney fees against Markel. The letter indicated that Markel had planned to deposit an unconditional tender into the registry |fiof the court and have the Jones family and lienholders assert their claims to the proceeds via a concursus proceeding. However, this had not been done.
On July 5, 2007, the Jones family amended the petition to name Medfax, St. Francis, Ingenix, and United as defendants and to assert a claim for penalties and attorney fees pursuant to La. R.S. 22:658, now La. R.S. 22:1892, for Markel’s failure to tender the policy limits.[1]
Thereafter, the Jones family filed a motion for summary judgment on August 5, 2008, asserting that there existed no genuine issue of material fact as to the limits of liability under Markel’s policy, the fact that their damages exceeded the available policy limits, and their entitlement to penalties, attorney fees, and costs. In opposition to the motion, Markel argued that it did not have satisfactory proof of loss required to trigger an unconditional tender. It asserted that issues of fact existed as to how to apportion the proceeds among the members of the Jones family. Also, because of the lienholders’ claims, issues of fact existed as to who was entitled to recover the proceeds.
On December 9, 2008, the trial court denied summary judgment. The denial was based on the facts that St. Francis/Medfax had abandoned its claim to any of the insurance proceeds and a settlement |7had been reached by United/Ingenix, the Jones family, and Markel whereby Markel paid $100,000 to United/Ingenix and the remaining policy limits ($200,000) plus legal interest to the Jones family in the total amount of $259,022.10.
The Jones family then reasserted its motion for summary judgment as to its claim for penalties and attorney fees against Markel. The trial court denied the motion on June 17, 2009, upon finding that due to the competing claims of the Jones family and the lienholders, there was a dispute of fact as to whether Markel was given satisfactory proof of loss showing who was entitled to the proceeds and in what amounts prior to the settlement.
Finally, the matter proceeded to a trial based on stipulations by the parties and exhibits entered into the record, most of which had been offered in litigation of the motions for summary judgment. In a thorough and well-reasoned written ruling, the trial court found that when Markel received notice that the lienholders had been made defendants on July 5, 2007, there no longer existed any impediment to Markel provoking a concursus proceeding by depositing at least the undisputed part of the policy limits into the registry of the court.[2] At that time, Markel had sufficient *1021 information to know that the claims exceeded the policy |sIimits. Depositing $200,000 plus accrued legal interest into the registry of the court would have protected Markel from any bad faith claim by the Jones family. The trial court concluded that Markel’s failure to make the deposit into the registry of the court was arbitrary and capricious thereby entitling the Jones family to penalties and attorney fees. Pursuant to La. R.S. 22:1892(B)(1), the trial court assessed a penalty of $100,000 against Markel, that amount being fifty percent of the undisputed $200,000 in coverage limits, and awarded $10,000 in attorney fees plus costs. Judgment in accordance with the court’s written reasons was rendered on April 22, 2010. Markel timely appealed, and the Jones family has answered the appeal.
MARKEL’S APPEAL
By assignments of error, Markel asserts that the trial court erred both in finding that it had satisfactory proof of loss necessary to trigger a tender prior to October 2008, when Medfax/St. Francis abandoned its lien claim and the settlement began to take shape, and in finding that Markel was arbitrary and capricious in failing to deposit $200,000 into the registry of the court as of July 5, 2007.
An insurer owes its insured a duty of good faith and fair dealing. As such, an insurer has an affirmative duty to adjust claims fairly and |3promptly and to make a reasonable effort to settle claims. La. R.S. 22:1973(A).[3] Both La. R.S. 22:1892(B)(1) and La. R.S. 22:1973(B)(5) and (C) provide for penalties against an insurer whose failure to pay a claim after receiving satisfactory proof of loss is found to be arbitrary, capricious, or without probable cause. The primary difference between the two statutory provisions is the time periods allowed for payment. Reed v. State Farm Mut. Auto. Ins. Co., 2003-0107 (La.10/21/03), 857 So.2d 1012. Upon receipt of satisfactory proof of loss, La. R.S. 22:1892 requires payment within 30 days, whereas R.S. 22:1973(B)(5) requires payment within 60 days. Both statutes are penal in nature and must be strictly construed. Id.; Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983).
Here, penalties were awarded under La. R.S. 22:1892. Whoever claims entitlement to penalties and attorney fees bears the burden of proving that the insurer received satisfactory proof of loss as a predicate to showing that the insurer’s failure to pay was arbitrary, capricious, or without probable cause. Reed, supra; Hart, supra. As discussed in McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La.1985), “satisfactory proof of loss” is that which suffices “to fully apprise the insurer of the |10insured’s claim.” Id., at 1089, citing Hart, supra. For a UM claim, the claimant provides satisfactory proof of loss when the insurer receives sufficient facts to fully apprise it of the following:
(1) the uninsured or underinsured status of the owner or operator of the other vehicle involved in the accident;
(2) the fault of the owner or operator of the other vehicle;
(3) the damages resulting from such fault; and
(4) the extent of those damages.
Id.; Delores M. v. Southern Farm Bureau Cas. Ins. Co., 44,883 (La.App.2d Cir.1/6/10), 29 So.3d 654.
*1022 Once the four criteria are met, the insurer cannot refuse to pay the claim on the basis that the insured is unable to prove the exact extent of the general damages, which are by their nature subjective. McDill, supra; Delores, supra. Once it is shown that the uninsured / underinsured driver was at fault and that damages resulted for which the UM insurer will be liable, the insurer must tender “the reasonable amount which is due,” meaning an amount over which reasonable minds could not differ. McDill, at 1091-1092. The insurer unconditionally tenders this amount to the claimant not in settlement of the case, but to l^show good faith and to comply with the duties imposed by the contract of insurance. Id.
In this matter, it is undisputed that Markel had sufficient information to fully apprise it that the vehicle involved in the accident and driven by Bertha Johnson was uninsured, that Johnson was solely at fault in causing the accident, and that the damages claimed by the Jones family resulted from Johnson’s fault. What Markel disputes is whether it had proof of the extent of damages. Markel asserts that it was not apprised of amounts over which reasonable minds could not disagree that were due to each individual plaintiff. Markel also asserts that the lienholders were aggressively pursuing their recovery to the exclusion of the Jones family and that the amounts the lienholders claimed were always in dispute and kept changing.
Though the trial court twice denied summary judgment on the issue of whether Markel should be assessed with penalties and attorney fees, the trial court determined after trial of the matter that by July 5, 2007, when the Jones family brought the lienholders into the suit, Markel had “all the information needed to show that the claims exceeded the policy limits.” We agree.
| ,2Even though the amounts claimed by the lienholders were not set, it was indisputable that Thomas and Mary had incurred substantial medical expenses. The reimbursements, though inexact, for medical expenses claimed by the lienholders in addition to the claims of the Jones family easily exceeded the policy limits, whether $200,000 as then claimed by Markel or $300,000 as claimed by the Jones family. Markel has no basis for arguing that it did not have sufficient proof that the total claims exceeded the policy limits. Moreover, the record shows that concern as to how to apportion the proceeds among the members of the Jones family for their individual claims was not an impediment to an unconditional tender as claimed by Markel on appeal. When the parties discussed a possible tender by Markel of $200,000 in November 2006, Markel asked counsel for the Jones family for “instructions as to whether or not Markel’s check should be one check for $200,000 payable to all of your clients or broken down in some other fashion.” This letter of November 27, 2006, indicates that Markel was willing to make payment as directed by the Jones family and was not prevented from tendering the undisputed portion of the policy limits by concern for how the money would be divided among the Jones family. Markel’s concern then and as matters progressed was in protecting itself from any | isclaim by the lienholders upon tender of policy proceeds to the Jones family. However, this concern could have been addressed by tendering the undisputed portion of the policy limits into the registry of the court thereby allowing the Jones family and the lienholders to assert their respective claims to the funds by a concursus proceeding.
Here, we reach Markel’s argument that the trial court erred both in finding its failure to deposit $200,000 into the registry *1023 of the court to be arbitrary and capricious and in awarding penalties and attorney fees. Markel asserts that it was not required to provoke a concursus and should not be found in bad faith for failing to do so. Markel also argues that provoking a concursus proceeding is not the same as making an unconditional tender.
For the court to assess penalties and attorney fees, it must be clearly shown that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. Delores, supra. This determination depends on the facts known to the insurer at the time of its action. Id.; Reed, supra. The phrase “arbitrary, capricious, or without probable cause” is synonymous with “vexatious” and means a refusal to pay that is unjustified and without a reasonable or probable cause or excuse. Reed, supra. An insurer’s actions are arbitrary, capricious, or _J_ywithout probable cause when its refusal of a claim is not based on a good faith defense. Id.; Wallace v. State Farm Mut. Auto. Ins. Co., 36,099 (La.App.2d Cir.6/14/02), 821 So.2d 704. The statutory sanctions should be imposed only where the facts negate probable cause for nonpayment. McDill, supra. Whether the insurer’s actions were arbitrary, capricious, or without probable cause such that sanctions should be imposed is a question of fact, and the trial court’s finding should not be disturbed absent manifest error. Delores, supra.
Here, the record shows that Markel’s refusal to pay was not based on any good faith defense to the UM claim. As stated, Markel had received satisfactory proof of loss by the time the Jones family amended their petition in July 2007 to add the lienholders as defendants. Pursuant to La. R.S. 22:1892, an insurer “shall pay” the amount of a claim due within 30 days after receiving satisfactory proof of loss. This is what the law requires of an insurer. Markel did not comply, and its failure to do so, which the record shows was primarily attributable to concerns about the lienholders, was arbitrary, capricious, and without probable cause.
As explained, a UM insurer is obligated to make an unconditional tender of the portion of the claim that cannot reasonably be disputed. McDill, supra; United Services Auto. Ass’n. v. Dugas, 593 So.2d 918 (La.App. 4th Cir.1992), writ denied, 596 So.2d 210 (La.1992). Moreover, by making an unconditional tender of the undisputed part of a claim, the insurer may thereby avoid statutory penalties and attorney fees. Clark v. State Farm Mut. Auto. Ins. Co., 2000-3010 (La.5/15/01), 785 So.2d 779. An unconditional tender does not finally or conclusively end litigation. Unconditional simply means that the insurer cannot place conditions on the tender, such as requiring a release or limiting the use of the funds. United Services, supra. The tender must be with “no strings attached” and cannot be a settlement offer. Clark, supra.
We are not persuaded by Markel’s argument that a tender made to the registry of the court is not an unconditional tender because the insured does not have unfettered access to the funds. Typically, the tender is unconditional in the sense that the insured can use it as his own. Id. However, jurisprudence recognizes that the insured may make an unconditional tender to the registry of the court and thereby avoid the imposition of penalties and attorney fees in cases where there are competing claimants for the policy proceeds.
In French v. Detroit Fire & Marine Ins. Co., 38 So.2d 165 (La.App. 2d Cir.1948), the insurer was assessed with penalties for failure to make an unconditional tender of
*1024 a property damage claim to the insured. | ^Instead, the insurer forwarded payment to its local agent who was also the insured’s creditor, being the mortgagee of the automobile for which the claim was made. The court observed that the insured should have deposited the policy proceeds and cited the contesting claimants to assert their respective claims. Because the insured failed to take this “precautionary procedure,” it could not.avoid the statutory penalty. Id., at 167. Earlier, in Hartford Fire Ins. Co. v. Landreneau, 19 La.App. 280, 284 140 So. 52, 55 (La.App. 1st Cir.1932), no penalty was warranted where the insurer when faced with two claimants demanding the proceeds “did all that it could reasonably have been required to do” by depositing the money in the registry of the court and asking for a concursus. Also, the dissenting judge in Combetta v. Ordoynef,[4] 2004-2347 (La.App. 1st Cir.5/5/06), 934 So.2d 836, writ denied, 2006-1353 (La.9/22/06), 937 So.2d 389, observed that concursus proceedings in “insurance claims settings are commonplace, reasonable, and not arbitrary,” and have “traditionally been used in uninsured motorist coverage cases where there has been a question as to whom sums owed by an insurer should be paid.” Id., at dissent p. 3, 934 So.2d at 845, and cases cited therein.
|17The concursus proceeding was also utilized in Marquez v. Progressive Insurance Company, 2006-1024 (La.App. 3d Cir.12/6/06), 944 So.2d 876, under facts similar to those of this case. Both the liability insurer and the UM insurer deposited their policy limits into the registry of the court and instituted concursus proceedings when faced with the competing claims of the injured plaintiff and a lien-holder seeking recovery of medical expenses. The trial court awarded all of the funds to the lienholder and granted no recovery to the injured plaintiff. Judgement was affirmed on appeal. While the result for the injured party was harsh, the procedure utilized to resolve the competing claims was sound.
La. C.C.P. art. 4652, a provision governing concursus proceedings, states in part:
No person claiming damages for wrongful death or for physical injuries may be impleaded in a concursus proceeding, except by a casualty insurer which admits liability for the full amount of the insurance coverage, and has deposited this sum into the registry of the court.
Here, there was no question that Markel was liable for the full amount of the available coverage, whether that amount was $200,000 or $300,000. Thus, there was no impediment to Markel invoking the con-cursus by | ^depositing at least the undisputed sum of $200,000 into the registry of the court as an unconditional tender. Notably, Markel ultimately tendered $300,000, the full amount of the policy limits, to Ingenix / United and the Jones family. Markel’s decision precluded litigation of the issue of the amount of coverage afforded under the policy.
Markel cites Berthelot v. Silver Oak Cas., Inc., 96-1204 (La.App.3d Cir.3/5/97), 692 So.2d 578, writ denied, 97-0874 (La.5/9/97), 693 So.2d 758, as support for its argument that depositing the policy limits in the registry of the court to provoke a concursus proceeding does not constitute an unconditional tender because the insured does not have access to the funds. BeHhelot, citing Ridenour v. Wausau Ins. Co., 627 So.2d 141 (La.1993), held that the insurer did not make an unconditional tender by depositing into the registry of the court only the policy limits without includ *1025 ing the accrued legal interest. The court explained that a UM insurer owes legal interest from date of judicial demand until an unconditional tender is made. Because the deposit did not include accrued interest, the full amount of the obligation was never tendered. Though the plaintiff argued that the deposit was not an unconditional tender because he was not allowed to withdraw the funds |lflat liberty, the court’s decision does not appear to have been based on this point.
Here, the record supports the trial court’s finding that Markel had received satisfactory proof of loss by July 5, 2007, when it was notified that the Jones family was amending its petition to add the lien-holders as defendants. By that time, Markel had all the information it needed to know that the claims exceeded the policy limits. Having no good faith defense to the Jones family’s claims, Markel’s failure to unconditionally tender the undisputed portion of the policy limits plus accrued legal interest was arbitrary, capricious, and without probable cause. Faced with the competing claims of the lienholders, Markel should have deposited the unconditional tender into the registry of the court thereby protecting itself from the imposition of penalties and attorney fees. Having failed to do so, we find no error in the trial court’s award of penalties and attorney fees against Markel.
THE JONES FAMILY’S ANSWER TO APPEAL
The Jones family asserts two assignments of error in answer to Markel’s appeal. First, the Jones family argues that the trial court erred in calculating the penalty based on $200,000, rather than the full policy limits of $300,000. La. R.S. 22:1892(B)(1) provides for a penalty “of 12i|fifty percent damages on the amount found to be due from the insurer to the insured, or $1,000, whichever is greater.” In the event of a partial payment or tender, the penalty is fifty percent of the difference between the amount paid or tendered and the amount found to be due. Id.
The record shows that the parties had initially discussed an unconditional tender of $200,000 in November 2006. Whether the policy limits were $200,000 or $800,000 was a disputed issue that, due to the settlement, was not judicially resolved. The trial court found that Markel had a “color-able argument” that its policy limits for the accident was $200,000, and that Markel should have at least made an unconditional tender of this amount when it had satisfactory proof of loss by July 5, 2007. Thus, the trial court applied the penalty to this amount ($200,000). We find no error in the trial court’s assessment of the fifty percent penalty on $200,000, the undisputed amount due when an unconditional tender should have been made.
Secondly, the Jones family asserts that the trial court erred in awarding only $10,000 in attorney fees and seeks to have the award based on its total recovery from Markel, inclusive of the penalty awarded and the final settlement.
hi La. R.S. 22:1892(B)(1) provides for an award of “reasonable attorney fees and costs” in addition to the penalty. In Lewis v. State Farm, 41,527 (La.App.2d Cir.12/27/06), 946 So.2d 708, this court addressed an award of reasonable attorney fees under this statute as follows:
In determining an award of attorney fees to be assessed under La. R.S. 22:658 [now R.S. 22:1892], a trial court should consider the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the amount in controversy, the novelty and *1026 difficulty of the questions involved and the percentage fixed for attorney fees in a plaintiffs contract. The trial court must base its award of attorney fees on the attorney’s efforts expended for the prosecution and collection of the loss, that being the amount of any claim due the insured, rather than on the total recovery awarded. The trial court’s conclusion with respect to the assessment of penalties and attorney fees is, in part, a factual determination and should not be disturbed in the absence of a finding that it was manifestly erroneous.
[Citations omitted.] Id., 41,527 at p. 33, 946 So.2d at 729-730.
The Jones family amended its petition to claim the statutory penalties and attorney fees in July 2007. The issue was finally resolved by judgment rendered April 22, 2010, after the trial court twice denied summary judgment and then ruled in favor of the Jones family after a trial based on stipulations and essentially the same evidence that had ^previously been offered and considered on the motions for summary judgment. The trial court was in the best position to determine a reasonable attorney fee based on the effort required to litigate the Jones family’s entitlement to statutory penalties and attorney fees. We can find no abuse of discretion in its award of $10,000 in attorney fees as compensation for litigating entitlement to the statutory penalty.
The Jones family has requested additional attorney fees for defense against Markel’s appeal. We find the Jones family entitled to such an award and hereby award an additional attorney fee of $2,000.
CONCLUSION
For the reasons set forth in this opinion, we affirm the judgment of the trial court and award an additional $2,000 in attorney fees to the Jones family for appellate work. Considering that the major issues on appeal were those asserted by Markel, costs of appeal are assessed against Markel.
AFFIRMED.

. La. R.S. 22:658 was redesignated as La. R.S. 22:1892 by Acts 2008, No. 415, § 1, effective January 1, 2009.

. Judge Benjamin Jones denied the first motion for summary judgment on December 9, 2008, due to the settlement not yet being of record. Judge John R. Harrison, serving pro tempore, denied the second motion for summary judgment on June 16, 2009. Then, Judge Jones served as trial judge and rendered the judgment at issue on appeal.

. La. R.S. 22:1973 was formerly designated La. R.S. 22:1220 prior to Acts 2008, No. 415, § 1, effective January 1, 2009.

. This case involved the payment of injured claimants by the insurer on a first-come-first-served basis, and its holding approving the insurer’s actions is not directly relevant here.