STONE, J.
ItThe appellants, James and Sheila Cooper (collectively referred to as “the Coopers”), appeal the trial court’s finding that the appellee, Farmers Insurance Exchange (“FIE”), did not handle the Coopers’ insurance claim in bad faith. For the following reasons, we affirm.
FACTS
After a hailstorm on March 30, 2013, the Coopers submitted a homeowner’s insurance claim with their insurer, FIE, alleging roof damage and resulting water damage, which included exterior and interior damage to their home. On April 2, 2013, FIE inspected the Coopers’ home and found minor wind damage and no hail damage. The adjuster noticed the roof was suffering from wear and tear and was improperly installed. Moreover, the adjuster noted evidence of long term water leakage around the Coopers’ skylights. The adjuster estimated the cost to repair the storm-related damages would total $684.99, which did not exceed the Coopers’ $1,000.00 deductible.
Unhappy with the result of the first inspection, the Coopers asked FIE to inspect their property again but were told to seek their own estimate. The Coopers selected Richard Meyers (“Meyers”), a Texas public adjuster, to inspect their property. Meyers estimated a total of $25,705.27 in storm-related damages; the estimate provided for replacement of the Coopers’ roof, some interior ceiling repairs, and replacement of the wood floors in the living room. The Coopers’ attorney forwarded the estimate to FIE, and FIE agreed to re-inspect the Coopers’ home.
On November 14, 2013, FIE re-inspected the Coopers’ home with a different adjuster. Again, FIE determined the Coopers’ home sustained |aminimal wind damage and no hail damage. FIE found no storm-created openings that could have caused interior damage to the Coopers’ home, but observed a roof suffering from improper installation and wear and tear. Nonetheless, FIE increased their original estimate to include the repair of three window screens and two light fixtures. As a result of the second inspection, the estimated storm-related damages exceeded the Coopers’ $1,000.00 deductible by $91.45 and the Coopers were issued a check for that amount.
Unsatisfied with the second estimate, the Coopers filed suit against FIE, pursuant to La. R.S. 22:1892 and La. R.S. 22:1972, claiming they were entitled to penalties and attorney fees because FIE handled their insurance claim in bad faith. The Coopers alleged FIE misrepresented pertinent facts related to their coverage, undervalued the damages to their property, and failed to issue sufficient funds to repair the damages. FIE denied the Coopers’ allegations and noted certain damages claimed by the Coopers were excluded by their policy, specifically damages caused by wear and tear and deterioration.
After failing to reach a settlement agreement, both parties agreed to invoke the appraisal process enumerated in the Coopers’ policy. The appraisal clause in the Coopers’ policy reads as follows:
Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the “residence *832 premises” is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to lathe umpire. A decision agreed to by any two will set the amount of loss.
Each party will:
a. Pay its own appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.
Both parties selected an appraiser to inspect the Coopers’ home. The Coopers chose Don Hotter (“Hotter”), a Louisiana public adjuster, and FIE chose John Crawford (“Crawford”), a Louisiana licensed general contractor and professional engineer. Both appraisers agreed to an award totaling $17,500.00 and FIE issued a check in that amount. After paying the costs of the public adjuster, appraisal, and litigation, the Coopers allege they received only $9,625.00, and were unable to make all the repairs. The Coopers proceeded with their claim of bad faith, asserting had FIE paid them $17,500.00 when the claim was initially submitted, they could have made the repairs immediately without expending unnecessary money.
At trial, the Coopers argued the appraisal award of $17,500.00 was significant compared to FIE’s estimates of $684.99 and $1,091.45, and, thus, demonstrated FIE purposefully and intentionally undervalued the storm-related damages to their home. FIE adhered to its original estimate and argued there was a reasonable and valid basis for every decision it made in handling the Coopers’ insurance claim. FIE presented the expert testimony of Crawford, and contended it only made concessions during the appraisal process relative to certain damages because it believed a larger appraisal award would resolve the litigation.
The trial court relied on FIE’s expert testimony, and the Coopers’ lack thereof, in concluding FIE’s failure to tender $17,500.00 prior to the appraisal process was not arbitrary, capricious, or without probable cause. LThe trial court found FIE was more than reasonable in its adjustment of the Coopers’ home, and the Coopers’ lawsuit was dismissed with prejudice. The Coopers now appeal.
DISCUSSION
An insurer owes its insured a duty of good faith and fair dealing. As such, an insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims. La. R.S. 22:1973(A). Both La. R.S. 22:1892(B)(1) and La. R.S. 22.1973(B)(5) and (C) provide for penalties, including attorney’s fees, against an insurer whose failure to pay a claim after receiving satisfactory proof of loss is found to be arbitrary, capricious, or without probable cause. Both statutes are penal in nature and must be strictly construed. Jones v. Johnson, 45,847 (La.App. 2d Cir. 12/15/10), 56 So.3d 1016, 1021.
To prevail under 221892(B)(1), the claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within the applicable statutory period, and that the failure to timely tender a reasonable amount was arbitrary and capricious. Jones, supra; See Block v. St. Paul Fire & Marine Ins. Co., 32,306 (La.App. 2d Cir. 09/22/99), 742 So.2d 746. Satisfactory proof of loss within the meaning of the statute is that which is sufficient to “fully apprise the insurer of the insured’s claim.” McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La. 1985); Jones, supra; Block, supra.
*833 Moreover, for the court to assess penalties and attorney’s fees, the claimant must show that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. Jones, supra. The phrase “arbitrary, capricious, or without probable cause” is synonymous with [¿‘vexatious” and means a refusal to pay that is unjustified and without a reasonable or probable cause or excuse. Reed v. State Farm Mut. Auto. Ins. Co., 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1021; Block, supra. Thus, penalties and attorney’s fees are inappropriate when the insurer has a reasonable basis to defend the claim and was acting in good faith reliance on that defense. Guillory v. Lee, 2009-0075 (La. 06/26/09), 16 So.3d 1104; Block, supra. This is especially true when there is a reasonable and legitimate question as to the extent and causation of a claim; bad faith should not be inferred from an insurer’s failure to pay within the statutory time limits when such reasonable doubt exists. Guillory, supra; Block, supra.
Whether the insurer’s actions were arbitraiy, capricious, or without probable cause such that sanctions should be imposed is a question of fact, and the trial court’s finding should not be disturbed absent manifest error. Jones, supra.
The Coopers argue the trial court was clearly wrong in finding that FIE’s failure to tender $17,500.00 prior to the appraisal process was not arbitrary, capricious, or without probable cause. According to the Coopers, FIE had satisfactory proof of the storm-related damages upon its first inspection of their home, and FIE failed to properly and timely compensate them pri- or to the invocation of the appraisal clause. At trial, the Coopers testified they experienced no problems with their roof before the hailstorm. After FIE’s second adjuster estimated only $1,091.45 in storm-related damages to their home, the Coopers believed they were being treated unfairly and had no choice but to proceed with litigation.
Instead of presenting the expert testimony of Myers, who estimated the storm-related damages to the Coopers’ home totaled $25,705.27, or | fiKotter, their appraiser, the Coopers called FIE’s appraiser, Crawford, to testify. Crawford was originally hired by FIE to assist in settlement negotiations with the Coopers, but continued to represent FIE through the appraisal process. Crawford testified that his evaluation of the Coopers’ home revealed minimal wind damage and no hail damage. Crawford estimated about $900.00 worth of storm-related damages, which included wind damage to four shingles. Crawford attributed the remaining damages to wear and tear, deterioration, and an improperly installed roof.
In support of his position, Crawford presented photographs taken by FIE’s adjusters and Myers. Despite the Coopers’ testimony that they had no issues with their roof prior to the hailstorm, photographs were presented showing the Coopers had previously made repairs to their roof. Additionally, the photographs showed deficiencies in the roofs installation. Crawford testified that each shingle had three to six nails; however, each shingle should have had eight nails. He also found the nails were placed too high on the shingles, which allowed the shingles to slide out of place. Crawford asserted this made the shingles more susceptible to wind damage and deterioration.
According to Crawford, the photographs of the Coopers’ skylights revealed debris and organic matter accumulating on the top of the skylights, which caused a hole at the head of the skylights. There was also lack of diverters, which if present, would have pushed water away from the skylights. Crawford attributed the leakage in *834 the Coopers’ home to the construction deficiencies. In regard to the Coopers’ wood floors, Crawford demonstrated to the court that water would accumulate on the Coopers’ patio during heavy rain, and the accumulation would force water through the 17Coopers’ back doors. Crawford affirmed his conclusions were consistent with the findings of FIE’s adjusters.
When questioned why he certified an appraisal award of $17,500.00 in storm-related damages if he only observed $900.00 worth, Crawford responded the appraisal process is like a “mediation” between experts and he conceded on certain damages to bring a resolution to the pending litigation. Crawford stated that Kotter, the Coopers’ appraiser, also conceded on the storm-related damages because he appraised the damages at $26,000.00.
Don Gallier (“Gallier”), an FIE corporate representative, testified the Coopers had a standard homeowner’s insurance policy that covered direct physical loss to property, but excluded loss for wear and tear, marring, and deterioration. Further, the policy excluded losses from inherent vice, latent defect, and mechanical breakdown. It also excluded losses from faulty, inadequate, or defective construction and maintenance. Gallier presented photographs from the first and second inspection of the Coopers’ home to demonstrate how FIE estimated the Coopers’ covered losses. Gallier reiterated the sentiments of Crawford, and testified the photographs illustrated minor wind damage and no hail damage to the Coopers’ roof and skylights. Consequently, Gallier stated the majority of the Coopers’ claimed damages fell outside their policy coverage.
Once the Coopers’ insurance claim went into litigation, Gallier testified he was forced to handle the case from a cost-benefit perspective. After failing to reach an agreement with the Coopers at an informal settlement conference, both parties decided to invoke the appraisal process. The Coopers received a $17,500.00 appraisal award, which covered the replacement of the Coopers’ roof and some interior repairs. After tendering |8the appraisal award, Gallier was under the impression that the dispute was resolved, which was the only reason FIE conceded to an award of that amount.
After reviewing the evidence, the trial court found the Coopers failed to meet their burden of proving FIE’s failure to tender $17,500.00 prior to the appraisal process was arbitrary, capricious, or without probable cause. The trial court relied on Crawford’s expert testimony, and placed emphasis on the Coopers’ failure to present their appraiser or any other expert testimony to rebut Crawford.
We find no manifest error in the trial court’s conclusion. Crawford, along with two adjusters for FIE, all determined that the Coopers’ home sustained minimal wind damage and no hail damage, with Crawford totaling the storm-related damages at about $900.00. FIE provided ample evidence to show the majority of the Coopers’ claimed damages were not covered under their insurance policy. The testimony of Crawford and Gallier established that FIE only conceded on claimed damages and agreed to a much higher appraisal award in hopes of avoiding litigation, which is an acceptable approach to the appraisal process.
The Coopers insist the trial court ruled that the appraisal process settled their lawsuit, including the bad faith claim. However, the trial court never suggested it considered the appraisal process a settlement of the Coopers’ bad faith claim. In its oral reasons for judgment, the trial court discussed the appraisal process, and the events leading up to it, to illustrate FIE’s good faith in handling the Coopers’ insur- *835 anee claim. The trial court noted that FIE sent out two separate adjusters, met with the Coopers’ public adjuster to discuss differences, and conceded on storm-related damages to |flthe Coopers’ home in order to get the matter settled. The trial court found there was no evidence of bad faith presented to the court, and that FIE was more than reasonable in how it adjusted the Coopers’ insurance claim. We ñnd no error in the trial court’s reasoning or conclusion.
CONCLUSION
For the foregoing reasons, the trial court’s judgment dismissing James and Sheila Cooper’s suit with prejudice is affirmed. Costs of this appeal are assessed to the Coopers.
AFFIRMED.