WILLIAMS, J.
liThe plaintiffs, Mickey McGuinness Quinlan,.. Mackey Sugar Quinlan and Charles Brian Sugar, appeal the district court’s ruling which granted a special.motion to strike filed by the defendant, Melissa Sugar Gold. The defendant has appealed the district court’s denial of attorney fees and costs. For the following reasons, we affirm in part, reverse in part and remand with instructions.
FACTS
The parties are the members of the same family. The plaintiff, Charles Sugar, is the biological son of Alan Sugar (“Alan Sugar”);[1] the defendant, Melissa Sugar *1178 Gold, is Alan’s adopted daughter.[2] The plaintiff, Mackey Quinlan, is the niece of Charles and Melissa; Mickey Quinlan is Mackey Quinlan’s husband.
On January 17, 2013, the defendant authored an article entitled “Elder Abuse and Betrayal of Trust” (“the Elder Abuse article”). The article was published on fic-tiontoolbox.blogspot.com. In the Elder Abuse article, the defendant referenced another article that had been published on sugaroilcompany.blogspot.com, and stated, “I don’t know who authored it. It’s not hard to deduce that someone in my family (one of us who love[s] my dad and are [sic] not just waiting for him to die so we can swoop in for our inheritance), must have penned it.” Additionally, in the Elder Abuse article, the defendant commended the author of another article that, had been b,published on sugaroilcompany.blog-spot.com, by stating, “[T]o whomever wrote it, [g]ood for you. Those greedy, phony vultures needed to be exposed.” The remainder of the “Elder Abuse” article provided:
WTF[3] happens to families when they think they might inherit some money? I’ve always heard stories about it, but never believed I would witness such greed directed at my own father and mother.
⅜ ⅜ ⅜
The past two months have been chock-full of family illnesses, hospitalizations and ■ most disturbingly, a cáse of what my immediate family and I believe to be more than just plain ole greed, something more sinister. Indeed, [e]lder abuse. Sadly, my father, who is in his mid-eighties and currently in the hospital and very ill, is the intended victim.
*• * *
Mickey, Mackey, Chucky: “Here [sign] ■ this paper. It’s just a simple for[m] for your taxes.”
You’ll be dead'by the time,your wife realized we just had you sign over your entire estate and wealth to us. Oops. Alan Sugar didn’t build that empire by being an idiot. He figured it out, and he ain’t dead. I don’t envy the wrath that awaits anyone, devious enough to trick an old man into signing away the rights to his company, home and livelihood. If the courts don’t get you—God sure will.
⅝ ⅜ *1»
Thereafter, in the article, the defendant proceeded to define . the term “elder abuse”[4] and stated, “The disturbing part of that definition and of what Chuck Sugar, Dr. Mackey Sugar Quinlan and Mickey Quinlan did to my |3father is ‘Trust.’ Betrayal of an elder man’s trust, is vile.” Further, the defendant posed the following question, “Do any of you have any experience with elder abuse?,” and proceeded to recount a story she had been told by an unnamed man whose father had allegedly been the victim of elder abuse.
On January 21, 2014, the plaintiffs filed a petition for injunctive relief and for damages, alleging that the defendant “had *1179 written and published false and defamatory statements” about them in the Elder Abuse article and two similar articles that had been published on two different websites, sugaroilcompany.blogspot.com and sugarfamilysecrets.blogspot.com. The plaintiffs sought to recover damages for defamation and/or intentional infliction of emotional distress. The plaintiffs also sought an injunction and a court order requiring the defendant to remove the alleged defamatory publications from the Internet.
On March 7, 2014, the plaintiffs filed an amended petition, which included the following specific allegations:
[[Image here]]
3.
On January 17, 2013, an article entitled “Elder Abuse and Betrayal of Trust” was published by Defendant on fiction-toolbox.blogspot.com. This article alleges that Defendant’s father, Alan Sugar (hereinafter “Alan”) is the victim of elder abuse at the hands of all three Petitioners.
* * *
The article continued to allege that the Petitioners preyed on Alan to gain control of his . company and compared their alleged actions to those of a con artist.
4.
The internet domain sugaroilcompa-ny.blogspot.com leads to a website titled “Sugar Family Saga, Sugar Oil Co. & The Sugar Family: Secrets, Lies & Betrayals |4Revealed.” This entire website appears to have been created for the sole purpose of defaming Petitioners.
5.
On or about January '20, 2013, an article titled “How Mickey Quinlan Took Control of Sugar Oil Company: How Was Alan Sugar Coerced Into Signing Away Everything He Owned” was published by Defendant on sugaroilcompany.blog-spot.com. This article again alleges that the Petitioners participated in elder abuse towards Alan Sugar, stating “[a]buse of wealthy elderly parents by .their greedy adult children and other •relatives is,as common as sin” and linking to an article about the alleged elder abuse of Brooke Astor. The article continues to allege that Petitioners were untrustworthy, lied to Alan to coerce him into doing something he did not want to do, and led a “crusade to take all of Alan’s money and property.” The article concludes with a promise to reveal other stories of “betrayals of family” on the website.
6.
The internet domain sugarfamilyse-crets.blogspot.com leads to a website titled “Sugar & Shit: Unbelievable Saga of Christian Counselor Son and Ungrateful Grandchildren Taking Money from Elder Relative.” Again, this entire website appears to have been created for the sole purpose of defaming Petitioners. There are links on the website to pages titled “Sugar Sham,” “Chuck Sugar,” “Elder Abuse,” and “Doctors w/ Morals.” '
7.
On or about July 31, 2013, an article titled “The unSugar Family-The Greedy Bunch” was. posted on sugarfamilyse-crets.blogspot.com. The first sentence reads: “Thank you Greedy Bunch: Chuck Sugar, Dr. Mackey Sugar Quin-lan, Dr. Scott Sugar, Mickey Quinlan (new title president of Sugar Oil).” This article alleges that Petitioner Charles Sugar is a hypocrite, a drug addict, and a homosexual. These allegations are particularly injurious to Charles Sugar because he makes his living as a Licensed Professional Counselor by practicing “Christian Counseling,” wherein he counsels patients from a Christian world-view.

*1180
JÉ-

On the Sugar <& Shit website, the “About” page contains three paragraphs that allege Petitioner Charles Sugar is a homosexual thief and imply [sic] that Petitioner Mackey Sugar Quinlan is an immoral, incompetent physician.
[[Image here]]
On May 7, 2014, the defendant filed peremptory exceptions of no cause of action and prescription. In the pleadings, the defendant admitted that she had authored and published the Elder Abuse article on fictiontoolbox.blogspot.com. However, she “categorically den[ied]” writing and/or publishing the articles on sugaroilcompa-ny.blogspot.com and sugarfamilyse-crets.blogspot.com.
The defendant also filed a special motion to strike the plaintiffs’ petition, pursuant to La. C.C.P. art. 971. She argued as follows: she published the Elder Abuse article on her blog “in the exercise of her right to free speech in connection with an issue of public interest, namely elder abuse”; in the article, she expressly invited the public to comment and offer their opinions regarding the issue of elder abuse; the statements made in the article were her own personal opinions and are protected by the First Amendment to the United States Constitution; and the defendants failed to allege fault (actual malice or negligence) sufficient to create a triable issue. The defendant also requested an award of reasonable attorney fees and costs.
Further, in support of the motion to strike, the defendant submitted an affidavit, in which she attested as follows:
She is the author of the article entitled “Elder Abuse and Betrayal of Trust” which was published' on fictiontool-box.blogspot.com;
She did not author or publish the articles on sugarfamilysecrets.blogspot.com and | fisugaroilcompany.blogspot.com and she has no knowledge of who did so; On August 25, 2012, Alan Sugar went to his office and discovered that the locks had been changed without any prior notice to him and that his office furniture had been placed in the parking garage; Around the same time, Alan Sugar asked to see the “production runs” for Sugar Oil Company and was denied the information;
In September 2012, Alan Sugar was 82 years old and his health/hospitalization insurance benefits were terminated without notice to him;
On January 1, 2018, an article entitled “Sugar Family Saga: How Mickey Quin-lan Took Control of Sugar Oil Company” was published on sugaroileompany.blog-spot.com; she read the article and was “angered and deeply saddened” by it; She believes the content of the article published on sugaroilcompany.blog-spot.com was “substantially true” and used it as “the occasion and background” for the Elder Abuse article she authored and published; and
In June 2013, Barbara Sugar (the defendant’s mother) and Kyle C. McGinnis (Alan Sugar’s long-time attorney) were removed from their positions as managers of Sugar Management, leaving plaintiff, Charles Sugar, as manager and plaintiff, Mickey Quinlan, as president.
The defendant also introduced into evidence an affidavit executed by Alan Sugar in which he attested as follows:
He was the sole owner of his business entities for 50 years;
He never intended to share ownership, possession or control of his company with anyone;
He never made any of his children “partners in [his] business”;
|7He was “completely unaware” that he executed documents that replaced him as the owner of his company;
*1181 He signed any paperwork given to him by his “son and [his] lawyer” and he “blindly trusted them”;
He never intended to give up ownership of his company;
The plaintiffs were aware that, upon his death, he wanted one-half of his estate to go to his wife and the other one-half to be divided among his children;
He was “shocked, upset and lost when [he] discovered that [he] had apparently signed documents, giving up control of, and ownership of [his] business”;
He would not have signed the documents if his attorney had explained the documents and the consequences of signing them;
He did not learn that he had signed over ownership of his company until after the death of his son, Miles Sugar;
He never knowingly gave up ownership of his company;
The plaintiffs, Charles Sugar and Mickey Quinlan, provide him with a “monthly allowance” which has caused him “intense shame, hurt, embarrassment and humiliation;
Miles Sugar, Charles Sugar, Mickey Quinlan and Kyle McGuinness (his former attorney) “tricked” him;
He was “shocked and outraged” by the plaintiffs’ response to the defendant’s special motion to strike;
The plaintiffs’ contention that he voluntarily signed his company over to them is “an outright false statement”;
|sHe never expressed to anyone that he did not feel competent to continue to run his company; he intended to do so until his death;
His relationship with his son, Charles Brian Sugar, “ended the day he took my company from [him]”;
He does not have a loving and close relationship with his granddaughter, Mackey Quinlan;
Charles Sugar took control of his company “in a tricky manner”;
He has discussed his “feelings of being cheated out of ownership of [his] company” with his wife and members of his immediate family; and
He informed the plaintiff, Charles Sugar, that the instant lawsuit was “hurting” him and asked him to “please drop the suit because of the stress it [was] causing [him].”
The trial court granted the defendant’s special motion to strike and dismissed the plaintiffs’ petition with prejudice. The court stated:
In order to succeed under [La. C.C.P. art.] 971, “the movant must make a pri-ma facie showing that the matter arises from an act in furtherance of his or her right to free speech or the right of petition and in relation to a public issue.” The Court finds the defendant has made her prima facie case. “In order to defeat the motion to strike, the plaintiff is then required to demonstrate a probability of success on his or her own claim.” The plaintiffs have failed to meet their burden in this case.
* * *
(Internal citations omitted). The court denied the defendant’s request for attorney ' fees and ordered the parties to bear their own costs. The court also overruled the peremptory exceptions of no cause of action and prescription.
The defendant filed a motion for new trial, arguing that an award of attorney fees and costs was mandated under La. C.C.P. art. 971(B). The trial court denied the motion, stating:
There are reasons why I did what I did insofar as the judgment that was rendered previously to | sresolve this case to save familial relationships, if that can be accomplished, which I doubt. But the Court did what it did in order to save *1182 time, effort, heartache, [and] monetary-loss on behalf of both parties[.]
Both parties appeal.
DISCUSSION
The plaintiffs contend the district court erred in granting the defendant’s special motion to strike. They argue that La. C.C.P. art. 971 does not apply to this case because the statements contained in the defendant blog were not made “in connection with a public issue.” According to the plaintiffs, the defendant .mentioned and defined “elder abuse” in her article. However, they maintain that the true intention of the defendant’s article was to injure their personal and professional reputations by describing specific actions allegedly taken by them and mentioning them by name.
The granting of a special motion to strike presents a question of law. Questions of law are reviewed de novo, with the judgment rendered on, the record, without deference to the legal conclusions of the tribunals below. Jones v. Delta Fuel Co., Inc., 48,885 (La.App. 2d Cir. 5/28/14), 141 So.3d 352; In re Succession of Carroll, 46,327 (La.App. 2d Cir. 7/20/11), 72 So.3d 384, writ not cons., 2011-1844 (La. 11/4/11), 75 So.3d 912.
La. C.C.P. art. 971 provides, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the personas right .of petition or free speech under the United States 'or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
1 iq(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
* sfc *
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) “Act in furtherance' of a person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue” includes but is not limited to:
* * *
' (c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest,
* * *
Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for. redress of grievances. Jones, supra; Johnson v. KTBS, Inc., 39,022 (La.App. 2d Cir. 11/23/04), 889 So.2d 329, writ denied, 2004-3192 (La. 3/11/05), 896 So.2d 68.[5] In a special motion to strike, *1183 the moving party must first satisfy the burden of proving the. cause of action | narises from an act in the exercise of free speech regarding a public issue. If the mover satisfies this initial burden of proof, then the burden shifts to the plaintiff to show a probability of success on his claim. Jones, supra; Johnson, ‘ supra. If more than one claim is’alleged in the petition, the court should examine the probability of success of each claim individually, and if the plaintiff can demonstrate a probability of success on any claim, then the motion must fail. Yount v. Handshoe, 14-919 (La. App. 5th Cir. 5/28/15), 171 So.3d 381.
Thus, in the instant case, the defendant had the initial burden of proving that the article she admittedly authored and published arose from an act in the exercise of her right of free speech regarding a public issue. Speech on matters of public concern has been described as speech “relating to any matter of political, social, or other concern to the community.” Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record. Id.; Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669; Hakim v. O’Donnell, 49,140 (La.App. 2d Cir. 6/25/14), 144 So.3d 1179.
After reviewing the record and relevant jurisprudence, we find that the' trial court correctly concluded that the plaintiffs’ claims were subject to the provisions of La. C.C.P. art. 971. As stated above, the language set forth in Article 971 dictates that the special motion to strike applies to all causes of action against a person “arising from any act of that person in further-■anee of the person’s right of petition or free speech ... in connection with a public issue[ij” The article defines such actions as including “any written or oral [ ^statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.” La. C.C.P. art. 971(F)(1)(c). We find that the defendant’s article, when read as a whole, pertained to an issue of public concern, ie., elder abuse. In the article, the defendant shared'the definition of elder abuse (as1 defined by Wikipedia); and added a testimonial from an unnamed source. She then went on to express her opinion that her father was the “intended victim” of elder abuse. Accordingly,' the trial court did not err in finding that the plaintiffs’ claims were subject to the special motion to strike.
Because the defendant has met her burden under Article 971, the burden’ now shifts to the plaintiffs. In ordér to overcome the motion to strike, the plaintiffs are required to demonstrate a probability of success on their claims of defamation and. intentional infliction of emotional distress. Defamation
In Louisiana, =the law regarding defamation is.well settled. It reads as follows: •
Defamation is a tort which involves the invasion of a person’s reputation and good name. Costello v. Hardy, 2003-1146 (La. 1/21/04), 864 So.2d 129; Fitzgerald v. Tucker, 1998-2313 [ (La. 6/29/99) ] (La. 6/26/99), 737 So.2d 706. The following elements are necessary to establish a claim for defamation; (1) a false or defamatory -statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence ór greater) on the part of the publisher; and (4) resulting injury. Kennedy, supra; Cos *1184 tello, supra; Hakim, supra. Thus, in order to prevail on a defamation claim, a plaintiff must prove “that the defendant, with actual malice or other fault, published a false statement with defamatory-words which caused the plaintiff damages.” Trentecosta v. Beck, 96-2388 (La. 10/21/97), 703 So.2d 552, 559, quoting Sassone v. Elder, 626 So.2d 345, 360 (La. 1993). If even one of the required elements of the tort is lacking, the cause of action fails) 13 Costello, supra; Douglas v. Thomas, 31,470 (La.App. 2d Cir. 2/24/99), 728 So.2d 560, writ denied, 1999-0835 (La. 5/14/99), 741 So.2d 661. Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule. Costello, supra; Fitzgerald, supra. Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory. Id. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. Costello, supra; Sassone, supra. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. Id.
Defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Costello, supra. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one’s personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory per se. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. Id.
When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury. Costello, supra; Kosmitis v. Bailey, 28,585 (La. App. 2d Cir. 12/20/96), 685 So.2d 1177. The injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish, even when no special damage, such as loss of income, is claimed. Id. Regardless of the type of injury asserted, however, a plaintiff must present competent evidence of the injuries suffered. Id. The plaintiff must also demonstrate | uthat the defamatory statements were a substantial factor in causing the harm. Id.
Finally, even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows that the statement was true, or that it was protected by a privilege, absolute or qualified. Costello, supra; Arledge v. Hendricks, 30,588 (LaApp. 2d Cir. 6/26/98), 715 So.2d 135.
The threshold issue in a defamation action is whether the words complained of are defamatory, i.e., capable of a defamatory meaning. As stated above, in the plaintiffs’ petition for damages, they alleged that the article the defendant wrote and published on fictiontoolbox.blog-spot.com—in which she stated “what [the plaintiffs] did to my father is ‘Trust’ Betrayal of an elder man’s trust”—was defamatory. The plaintiffs also alleged that statements the defendant published indicated that they had “preyed on Alan to *1185 gain control of his company and compared their actions to those of a con artist.”
As stated above, the defendant admitted that she authored and published the article entitled “Elder Abuse and Betrayal of Trust” on fictiontoolbox.blogspot.com. In that article, the defendant stated that her father was the “intended victim” of elder abuse, declared that the plaintiffs betrayed her father’s trust, described the plaintiffs’ actions as “vile” and referred to the plaintiffs as “greedy, phony vultures.”
Our review of the defendant’s Elder Abuse article and the relevant jurisprudence reveals that the words about which the plaintiffs take issue are not actionable in defamation under Louisiana law. The complained-of words are pure statements of the defendant’s opinion, which is based solely on her subjective view. See Bussie v. Lowenthal, 535 So.2d 378 (La. 1988); 15Cooksey v. Stewart, 41,336 (La.App. 2d Cir. 8/23/06), 938 So.2d 1206. That is because falsity is an indispensable element of any defamation claim, and a purely subjective statement can be neither true nor false. Id.
Further, in the article, the defendant suggested that the plaintiffs duped her father into signing over his “entire estate.” These words are “capable of a defamatory meaning” because they could, “by their very nature, tend to injure [the plaintiffs’] personal or professional reputation.” However, the defendant submitted an affidavit in which she expressed her belief that the statements were true. Additionally, she submitted the affidavit executed by Alan Sugar, in which he attested that the plaintiffs “tricked” him into signing over the ownership of his company to them. In response to the defendant’s motion to strike, the plaintiffs failed to introduce any evidence to show that the statements she made in the article were false. Accordingly, we find that the plaintiffs failed to meet their burden of proving the probability of success on their defamation claim. This argument lacks merit.

Intentional Infliction of Emotional Distress

In order to recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct. White v. Monsanto Co., 585 So.2d 1205 (La. 1991); Henderson v. Bailey Bark Materials, 47,946 (La.App. 2d Cir. 4/10/13), 116 So.3d 30. Conduct is considered extreme and outrageous when it goes “beyond all possible bounds of decency” and is “regarded as 11fiatrocious and utterly intolerable in a civilized community.” White, supra, at 1209; Henderson, supra. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. White, supra; Henderson, supra.
In response to the defendant’s motion to strike, the plaintiffs did not present any evidence to establish that the defendant engaged in “extreme and outrageous conduct” or that they suffered severe emotional distress. The words published by the defendant, while perhaps insulting, do not rise to the level of conduct “so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency.” Consequently, we find that the trial court did not err in granting the defendant’s special motion to strike with regard to the plaintiffs’ claim for intentional infliction of emotional distress.
The plaintiffs also contend the district court erred in dismissing their entire *1186 petition with prejudice. They argue that only a portion of the allegations in their, petition, the article on fictiontoolbox.blog-spot.com, was at issue in the special motion to strike. According to the plaintiffs, the remaining claims, regarding the articles published on the two other websites, sugaroilcompany.blogspot.com and sugar-familysecrets.blogspot.com, remain viable.
Our review of the record reveals that the defendant admitted that she authored and published the Elder Abuse article of fictiontoolbox.blogs.com. However, she denied writing and publishing the other articles. The plaintiffs failed to. present any evidence to prove that the defendant authored and published the articles on sugar-: oilcompany.blogspot.com and sugarfamily-' secrets.blogspot.com. Consequently, this record is devoid of any |^evidence that the plaintiffs are able to establish a probability of success on the claims with regard to the articles that were published on sugaroil-company.blogspot.com and sugarfamilyse-crets.blogspot.com. Therefore, we see no error in the trial court’s dismissal of the plaintiffs’claims in their entirety.

The Defendant’s Appeal

As stated above, the defendant contends the trial court erred in denying her request for attorney fees and costs. She argues that LaV C.C.P. art. 971 mandates an award of attorney fees and costs.
In. any action subject to La. C.C.P. art. 971(A), a prevailing party on a special motion to strike shall.be awarded reasonable attorney fees and costs. La., C.C.P. art. 971(B); Succession of Carroll, supra. As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract. State, Dept. of Transp. & Dev. v. Wagner, 2010-0050 (La. 5/28/10), 38 So.3d 240; Carroll Insulation & Window Co., Inc. v. Biomax Spray Foam Insulation, LLC, 50,112 (La.App. 2d Cir. 11/18/15), 180 So.3d 518. Statutes providing for penalties and/or attorney fees are penal in nature and must be strictly construed. See Langley v. Petro Star Corp. of La., 2001-0198 (La. 6/29/01), 792 So.2d 721; Jones v. Johnson, 45,847 (La.App. 2d Cir. 12/15/10), 56 So.3d 1016. An award of attorney fees is a type of penalty imposed, not to make the injured party whole, but rather to discourage a particular activity on the part of the opposing party. Langley, supra; Sharbono v. Steve Lang & Son Loggers, 1997-0110 (La. 7/1/97), 696 So.2d 1382.
As previously stated, La. C.C.P. art. 971(B) mandates an award of reasonable attorney fees and costs. Delta Chem. Corp. v. Lynch, 2007-0431 18(La.App. 4th Cir. 2/27/08), 979 So.2d 579, 588, writ denied, 2008-0683 (La. 5/30/08), 983 So.2d 898 and 2008-0761 (La. 5/30/08), 983 So.2d 904; see also, Succession of Carroll, supra; Ahearn v. City of Alexandria, 2015-1014 (La.App. 3d Cir. 5/4/16), 191 So.3d 689. Prior to its 2004 amendment, Article 971 provided that on a special motion to strike, a “prevailing defendant shall be entitled to recover” reasonable attorney fees and costs. The 2004 amendment to the article changed the law to provide that “a prevailing- party on a special- motion to strike shall be awarded reasonable attorney fees and costs.” (Emphasis added).
We find that the defendant, as the prevailing party in this matter, is entitled to an award of reasonable attorney fees and costs. Consequently, the trial court erred in denying the defendant’s request for attorney fees and costs. Accordingly, we reverse the trial court’s denial of attorney fees and remand this matter to the trial court with instructions to award the defendant reasonable attorney fees and costs.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s ruling which granted the defendant’s special motion to strike. We re *1187 verse the trial court’s ruling denying attorney fees and we remand this matter with instructions to the trial court to award the defendant reasonable attorney fees and costs. Costs of this appeal are assessed to the plaintiffs, Mickey McGuinness Quinlan, Mackey Sugar Quinlan and Charles Brian Sugar.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.

. Alan Sugar was the owner of Sugar Management, L.L.C. and Sugar Oil Company, *1178 L.L.C. The offices of both entities are located in Shreveport, Louisiana.

. Melissa Sugar Gold is the biological daughter of Alan Sugar’s wife, Barbara Palmer Sugar. Alan adopted Melissa, by notarial act, on February 13, 2013.

. WTF is an initialism for "what the freak” or "what the f*ck.”

.The defendant provided the definition from Wikipedia, an online Encyclopedia, .stating: According to Wiki: Elder Abuse, it is: Elder abuse (also called "elder mistreatment,” "senior abuse,” abuse in later life, "abuse of elder adults," "abuse of elder women,” and “abiise of elder men”) is a single, or repeated act, or lack of appropriate action, occurring within any relationship where there is an expectation of trust, which causes harm or distress to an elder person.

. In Section 2 of Acts 1999, No. 734, Section 1, during which the legislature enacted La. C.C.P. art. 971, the legislature stated its.intent in enacting the provision as follows:
Section 2. The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid ¡exercise of the constitutional rights of freedom of speech and petition for redress 'of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the *1183 intention of the- legislature that the Article .enacted pursuant to this Act shall be construed broadly.-